# WILLIAM F. KERNKAMP, Respondent, v. ANNA SCHULZ, Appellant.

## (176 N. W. 108.)

**Trusts — when real property is transferred to one person and the consideration paid by another, a trust is presumed in favor of the payee.**

1. Section 5365, Comp. Laws 1913, reads as follows: "When a transfer of real property is made to one person and the consideration therefor is paid by or for another, a trust is presumed to result in favor of the person by or for whom such payment is made."

The plaintiff, and one Wm. Schulz, now deceased, were the owners and equally interested in several quarter sections of school land. The title of one of the quarter sections, purchased at a school-land sale, was evidenced by a contract taken in the name of Schulz, though it appears, by competent evidence, that the plaintiff paid one half of part of three purchase-price payments, each for $512, and one half of the interest on deferred payments, and one half of the taxes from the year 1903 to the year 1918; and that then the defendant paid, without the knowledge or consent of the plaintiff, the last two payments on the school-land contract, and the interest then due.

William Schulz, prior to his death, assigned the contract to his wife, this defendant.

It is *held*, under the above section, that the said William Schulz held one-half interest in said land in trust for the plaintiff, subject only to the condition that the plaintiff must pay one half of the two remaining payments paid by the defendant, and half of the accrued interest on such payments made by her.

**Trusts — wrongfully detaining thing or gaining it by mistake.**

2. Under §§ 6279 and 6280, Comp. Laws 1913, it is further *held* that the contract for the purchase of the school land in controversy was inadvertently, and by mistake, taken in the name of William Schulz, and that he held one-half interest in the land described therein, as an involuntary trustee for the benefit of the plaintiff, upon the plaintiff paying his one half of the purchase price thereof, and one half of the interest on deferred payments, and one half of the taxes levied against such land during each year since it was so purchased.

Opinion filed December 18, 1919.

Appeal from a judgment of the District Court of Barnes County, *J. A. Coffey,* J.

Judgment affirmed.

*M. J. Englert,* for appellant.

The authorities are conclusive on the subject that if the complaint alleges an agreement, constituting an express trust, then there can be no resulting or implied trust. Golschalck v. Fulmer, 51 N. E. 852; Potter v. Clapp (Ill.) 96 Am. St. Rep. 322, 68 N. E. 81; Monson v. Hutchin (Ill.) 62 N. E. 788; Byers v. McEnry (Iowa) 91 N. W. 797; Stevens v. Fitzpatrick (Mo.) 118 S. W. 51; Butts v. Cooper (Ala.) 44 So. 616; Russ v. Mebius, 16 Cal. 350; Walker v. Bruce (Idaho) 97 Pac. 250; Ames v. Howes (Idaho) 93 Pac. 35.

"A parol promise or agreement by one person to purchase lands and hold them in trust for another is within the statute of frauds, and not enforceable as an express trust." 39 Cyc. 49 (c) and authorities cited to note 69; Harvey v. Shipe (Va.) 88 S. E. 830; Ferguson v. Robinson (Mo.) 167 S. W. 447; Doom v. Brown (Ky.) 188 S. W. 475; Church v. Smith (Ind.) 100 N. E. 384.

"A verbal agreement between two or more persons to make a joint purchase of lands, title to be taken in the name of one for the benefit of all, is within the rule" (of the Statute of Frauds, and not binding). 39 Cyc. 49 (c) and authorities cited under note 70; N. D. Comp. Laws 1913, § 5963.

The authorities hold that claim of possession and payment of taxes is not sufficient to take the matter out of the Statute of Frauds, or to establish a resulting trust. Godschalck v. Fulmer (Ill.) 51 N. E. 852; Perkins v. Perkins (Mass.) 63 N. E. 926; Harney v. Burhns (Wis.) 64 N. W. 1031; Englebracht v. Herrington, 101 Kan. 720, 172 Pac. 715, L.R.A.1918E, 785, and authorities cited; Smith v. Burnham, 3 Sumn. 435, Fed. Cas. No. 13,019; Bigler v. Baker (Neb.) 24 L.R.A. 255, 58 N. W. 1026.

No trust results in favor of the party paying the consideration, or part thereof, for land, where the title is made to another with his consent. Monson v. Hutchin (Ill.) 62 N. E. 788; Ecton v. Moore, 4 Ky. L. Rep. 307; Palmer v. Sterling, 41 Mich. 218, 2 N. W. 24; Tiedeman, Real Prop. Enlarged ed. p. 476, § 500; 39 Cyc. 104 (b) and authorities cited; Godschalck v. Fulmer (Ill.) 51 N. E. 852; Home Land & Loan Co. v. Routh, 123 Ark. 360, 185 S. W. 467, Ann. Cas. 1917C, 1142; Pavlovich v. Pavlovich (Cal.) 135 Pac. 303; Land Co. v. McGregor

(Iowa) 149 N. W. 617; Bernauer v. McCall-Webster Elev. Co. (N. D.) 171 N. W. 282; Andreas v. Andreas (N. J. Eq.) 94 Atl. 415; Casey v. Casey, 146 N. Y. Supp. 348; Martin v. Thomas (Or.) 144 Pac. 684; O'Donnell v. McColl (Wash.) 154 Pac. 1090; Belcher v. Young (Wash.) 155 Pac. 1060.

Where the plaintiff seeks to establish a resulting trust, and depends upon the same through circumstances of making the payment, or paying the consideration, the payment of consideration must be made and paid by him at the time of the transaction or the sale. Ostheimer v. Single (N. J. Eq.) 68 Atl. 231; Howell v. Howell, 15 N. J. Eq. 78; Brooks v. Fowler, 14 N. H. 248; Kelly v. Johnson, 28 Mo. 249; Woodside v. Hewell (Cal.) 42 Pac. 152; Millard v. Hathaway, 27 Cal. 119; Doll v. Gifford (Colo.) 56 Pac. 676; Burden v. Sheridan (Iowa) 14 Am. Rep. 505; Webb v. Webb (Iowa) 104 N. W. 438; Parker v. Newitt (Or.) 23 Pac. 246; Hickson v. Culbert, 19 S. D. 207, 102 N. W. 774.

The measure of proof necessary in case where the plaintiff claims a resulting trust in his favor must be clear and free from reasonable doubt. Bernauer v. McCaull-Webster Elev. Co. (N. D.) 171 N. W. 282; Lehman v. Lewis, 62 Ala. 129; Heneke v. Floring, 114 Ill. 554; Green v. Deitrich, 114 Ill. 636; St. Patrick's Church v. Daly, 116 Ill. 76; Woodward v. Sibert, 82 Va. 441; Catoe v. Catoe (S. C.) 10 S. E. 1078; Hoover v. Hoover, 29 Pa. 201; Behm v. Molly (Pa.) 19 Atl. 562; Guest v. Guest, 74 Tex. 664.

*A. P. Paulson,* for respondent.

"No variance between the allegation in the pleading and the proof shall be deemed material, unless it has actually misled the adverse party, to his prejudice, in maintaining his action or defense upon the merits." N. D. Comp. Laws 1913, § 7878; Maloney v. Geyser Mfg. Co. 17 N. D. 195, 115 N. W. 669; Robertson v. Moses, 15 N. D. 351, 108 N. W. 788; Halloren v. Holmes, 13 N. D. 411, 101 N. W. 310.

"When a transfer of real property is made to one person, and the consideration therefor is paid by or for another, a trust is presumed to result in favor of the person by or for whom such payment is made." Fleischer v. Fleischer, 11 N. D. 221, 91 N. W. 51; Dalrymple v. Security Loan & T. Co. 9 N. D. 306, 79 N. W. 981.

There was no delay on the part of the plaintiff, after he learned the true situation, to enforce his rights, and he certainly cannot be accused

of laches, or of sleeping on his rights. Hagan v. Powers, 103 Iowa, 593, 72 N. W. 771; Rayl v. Rayl (Kan.) 50 Pac. 501; Costa v. Silva (Cal.) 59 Pac. 695; Dans v. Dans (Mass.) 28 N. E. 905; Barlow v. Barlow (Kan.) 28 Pac. 607; Fleisher v. Fleisher, 11 N. D. 229.

The intention on the part of the payer may be proved not only from his express declarations, but also from the circumstances surrounding the transaction. Carter v. Montgomery, 2 Tenn. Ch. 216; Zimmerman v. Barber, 176 Pa. 1.

The intention of the person paying the consideration as to the interest to be taken by the grantee is to be determined as of the time of the conveyance. Snider v. Johnson, 25 Or. 329.

GRACE, J. The defendant is the widow of William Schulz, who, during his lifetime, and the plaintiff, were farmers of Barnes county, and were neighbors and friends.

It appears that together they had many business transactions, as well as transactions between themselves and other persons; that they bought and owned certain lands together, and at times sold land which they thus jointly owned.

Among other lands which they purchased and owned were several quarters of school lands, in which they were jointly and equally interested.

It is claimed by the plaintiff that the northeast quarter of section 36, township 141, north of range 58 W., Barnes county, North Dakota, was school land, and was purchased by plaintiff and defendant, at the time it was sold publicly at the school-land sale, at the courthouse, in November, 1902, in Valley City, Barnes county; and that, at the time the land was purchased at such sale, each of them contributed one half of the purchase price of the land, both principal and interest, but that the contract, by inadvertence, was made to William Schulz as vendee, in whose possession it continuously remained until his death, in the spring of 1917.

At the school-land sale, the land in question was sold for $2,560, one fifth of the purchase price, or $512, being paid in cash at the execution and delivery of the contract, and the further sum of $15.70 interest, the interest from the date of the contract to the 1st day of January, 1903. The balance remaining due upon the contract bore interest at

the rate of 6 per cent per annum. The second payment of $512 became due January 1, 1908, and a like amount at the expiration of each five-year period thereafter, until the whole purchase price was paid.

It is claimed by the plaintiff that he paid one half of the first payment, both principal and interest; that he has paid one half the payment due on January 1, 1908, and one half of the payment due January 1, 1913, and one half of all the interest that had accrued up until 1918.

He also claims to have paid his one half of the taxes chargeable against the land in question until the year of 1918, and further claims that, prior to the time of the death of William Schulz, and in contemplation thereof, and without any consideration, he sold and assigned all his property, both real and personal, to his wife, this defendant; that the land in question was a portion of the property so sold and assigned.

Plaintiff claims defendant had full knowledge of the plaintiff's interest in and to the premises, and that she took and received the same, understanding that the said William Schulz had only an undivided one-half interest in and to said land.

It is further claimed that she paid no consideration therefor; that, soon thereafter, she surrendered the contract to the state of North Dakota, paid the two remaining payments, and the interest accumulated thereon, in the sum of $1,054.72, and this, without the knowledge or consent of the plaintiff, and received the patent from the state of North Dakota for all of the said premises.

The plaintiff further claims that he has offered to repay to the defendant the one half of the sum of money so disbursed by her, and has demanded that the defendant deed to him an undivided one-half interest in and to the premises, in accordance with the agreement and understanding existing by and between William Schulz and the plaintiff. .

Plaintiff further claims that, in the season of 1918, he furnished one half the seed required to sow and plant the land, and operated the land, through a tenant, in conjunction with the defendant, but that the defendant took and received the entire crop planted and harvested on the land, consisting of wheat, oats, and other grains, of the net value of $1,565.97.

The answer claims that William Schulz purchased the land in question, and that, prior to his death, he sold and conveyed same to defendant, and that she thereafter secured a conveyance from the state of North Dakota. Further answering, the defendant interposed a general denial.

The plaintiff maintains this action upon the theory and claims that he was a purchaser of one-half interest of the land in question at the said sale of this school land. That at such time he paid one half of the whole of the initial payment, and one half of subsequent payments, except the last two, and the accrued interest on the amount remaining due until 1918, and has paid one half the taxes until 1918, and that the contract for the purchase of the land was inadvertently executed by and between William Schulz and the state of North Dakota, and for this reason a trust resulted in plaintiff's favor to the extent that the said William Schulz held one half of such land in trust for the plaintiff, and for his use and benefit.

The defendant, in effect, claims that the purchase of the land was by William Schulz only, and that he made all the payments, both principal and interest, except only such as have been made by this defendant, and that he also paid the taxes.

There is considerable evidence in the case, some of which consists of written documents introduced as exhibits, and, in addition to this, there is considerable oral testimony.

We may concisely state the evidence adduced on behalf of the defendant. It consists largely of evidentiary facts contained in written documents, such as the purchase contract between the state of North Dakota and William Schulz; the assignment of it to Anna Schulz, widow of deceased; and the patent from the state of North Dakota, to her, of the land in question; and, further, of receipts issued by the treasurer of Barnes county to William Schulz, describing the payments on principal, and the payments of accrued interest, made by him. Receipts were issued from the treasurer of Barnes county to William Schulz, for the initial payment of $512 on the principal, and the payment made January 18, 1908, for $512, and one made January 30, 1913, for $512.

Receipts likewise were issued by such treasurer to William Schulz, at various intervals, for the payment of the accrued interest. There were fourteen of such receipts for interest issued by the treasurer to William Schulz, which showed, with one exception hereafter to be mentioned payment of the accrued interest from February, 1903, to January, 1917, the amount of the accrued interest being shown in each receipt.

During said time, there was only one receipt issued to William Schulz and Wm. Kernkamp for the payment of the accrued interest, and this

bears the date of January 27, 1914. The receipt for the payment of interest on January 14, 1918, was issued to Anna Schulz.

There are also two receipts showing the payments of two $512 payments, which were paid January 4, 1918. The tax receipts show that the land, from the time of the contract, was assessed in the name of William Schulz, up to the year of 1916. They further show that the tax receipt for the payment of taxes for the years of 1903, 1906, 1907, and 1916 were issued to William Schulz, and for the years of 1904, 1905, 1908, 1910, 1911, 1913, 1914, and 1915 were issued to Schulz and Kernkamp.

In 1909, the receipt for the payment of taxes was issued to Fred Schilling, who had purchased the land on contract, but who did not permanently retain it.

In 1917 and 1918, the tax receipts were issued to Anna Schulz, and in her name.

The oral evidence offered by defendant consisted of her own testimony, and that of one Ernest Schroeder. The latter's testimony is to the effect that he had an arrangement with William Schulz to buy the land in question, at the school-land sale, and that Mr. Schulz was to furnish him the money with which to buy it. He claims that he did buy it, but that it was never turned over to him, and that he never had the money to pay for it. He also testifies that he talked with Kernkamp, two months after the sale, with reference to having the land turned over to him (Schroeder), and that at that time Kernkamp told him that he had nothing to do with it, that Schulz had it himself. He testified further that Schulz made the initial payments.

Schroeder's testimony further shows that he later leased the land from Mr. Schulz for the year of 1904, and that the seed was furnished to him by Mr. Schulz; that he had a talk with Kernkamp with reference to getting some seed, of which he was short while seeding, which amounted to about 20 bushels; that Kernkamp told him to go to Mr. Schulz to get it; that he, Kernkamp, did not have anything to do with it.

The defendant's testimony shows that she made the last two principal payments on the contract, and paid the interest then due, and received the patent for the land. It further shows the assignment of the school-land contract to her by Mr. Schulz.

It further shows that she claimed the crop of 1918 on the land, and

that she so told Kernkamp, and it further shows that he claimed part of it.

Her testimony further shows that the inventory appraisement, exhibit "S," which was made to the state, and which related to the inheritance tax, was prepared by Winterer and Ritchie, her attorneys. Section 9 of which described an undivided one half of the interest in this land. It was valued at $1,888.

On the part of the plaintiff, evidence was introduced showing sale of three quarter sections of land to one Fred W. Schilling, one quarter section of which was the land in question. The sale was evidenced by a contract for deed, executed by William Schulz and Wm. Kernkamp as vendors, and said Schilling as vendee. The purchase price stated in the contract for the whole tract so sold was $18,450.

The contract, in substance, provided that if prior to the payment in full to the state of North Dakota, under the school-land contract, the purchaser had paid the purchase price of all the land, excepting the balance due upon the school-land contract, Schulz and Kernkamp would deed the tract to the purchaser and assign him the school-land contract.

The signatures of all the parties to this contract were proved by competent evidence, and there is no doubt of the genuineness of the contract.

By a lease dated the 11th day of October, 1911, William Schulz and Kernkamp leased to one Charles F. Bartz, for a term of three years, three quarter sections of land, one quarter of which was the land in question. This lease was properly proved and offered in evidence.

It appears from the testimony of the plaintiff, that the land in question was rented to one Snyder for the years of 1903, 1904, and 1905; that the division of the grain was made at the elevator, and that the half of the crop which went to Schulz and Kernkamp was divided between Kernkamp and Schulz equally.

The terms of the lease were such that the owners of the land got one half of the crop. It appears the land was rented to a different party during the years of 1906 and 1907, upon the same terms it had theretofore been rented to Bartz, and the rent received from the land divided in the same manner, as between this plaintiff and Schulz. It was summer fallowed in 1908. In the year of 1908, in the month of July, the land was sold, with other lands, to Mr. Schilling under the contract above mentioned.

The land was farmed during 1909 and 1910 under this contract. Said sale was made upon crop payments, one half the crop was to be paid to Schulz and Kernkamp, and applied on the contract. This appears to have been done for those years, and the share which they received divided equally between them. Under the lease from Schulz and Kernkamp to one Bartz, he farmed the land for the years of 1912, 1913, and 1914.

The land in question, with other land, was rented to one Hoffman for the years of 1915, 1916, and 1917, upon the same terms that it had theretofore been leased to other parties, that is, on shares, one half to the tenant and one half to Schulz and Kernkamp, and the share which they received was divided equally between them.

The 1917 crop was, however, hailed out; the crop was light and the share of Schulz and Kernkamp, for that year, was put in the granary on section 31, and what was not used for seed was sold and divided, as usual, between Kernkamp and this defendant, Mr. Schulz having died.

Kernkamp testifies that, in the spring of 1918, he looked after the seeding operations on this land, and that the seed sowed on the land in that year was taken from the granary on section 31. Mr. Hoffman was still renting the land.

Kernkamp further testifies that he had a talk with this defendant in her house in Valley City in the latter part of December, 1917, or the first part of January, 1918, in which he told her there was a payment coming due on the school land in a week or so, and that he would come in and they would go up and straighten that out, and pay that up, and that she did not say anything against that; she said nothing at all. That later on, when he paid the interest on the other lands, he found that the defendant had paid up the balance on the contract.

Witness Schilling's testimony confirms the making of the contract for the sale of the land to him. It also shows that he kept the land two years and surrendered it, and that he delivered half the crop he raised thereon to Schulz and Kernkamp. In other respects, it, to some extent, corroborates Kernkamp's testimony.

The testimony of Triebold shows that he, in the year of 1915 and 1916, was engaged in buying grain at Alta, North Dakota; that he bought certain grain from Kernkamp, Schulz, and Hoffman, and made the scale tickets out in their name.

It will be remembered that Hoffman, during these years, had the land in question, together with the west half of section 31, leased. Triebold testifies the ownership of the grain, which he bought from those parties, was in Schulz, Kernkamp, and Hoffman.

Witness Utke's testimony is to the effect that he worked on the land in question and the west half of section 31; that he was hired to work on such land by Schulz and Kernkamp; that Schulz and Kernkamp paid him by the month; that he was working there by the month, and worked there a whole year; that Schulz and Kernkamp each furnished half of the machinery, and both furnished the seed; that that year the land in question was seeded to flax, and he hauled the flax to the elevator and delivered it in the name of Schulz and Kernkamp; that he asked Mr. Schulz in whose name it should be delivered, and he told him Schulz and Kernkamp.

We have referred, at length, to the testimony in the case, for the reason, upon the consideration of it and its character, must the determination rest, and the conclusion reached, if at all, as to the creation, by operation of law, of a resulting trust of an interest in the land in question, in plaintiff's favor.

Section 5365, Comp. Laws 1913, reads as follows: When a transfer of real property is made to one person and the consideration therefor is paid by or for another a trust is presumed to result in favor of the person by or for whom such payment is made.

In this case, if the evidence is clear and convincing that the plaintiff paid one half the purchase price of the land in controversy, then it must follow that Wm. Schulz held such one-half interest in trust for the plaintiff, though the title of all such land was in Schulz. This principle is recognized in the case of Dalrymple v. Security Loan & T. Co. 9 N. D. 306, 83 N. W. 245; Smith v. Security Loan & T. Co. 8 N. D. 451, 79 N. W. 981.

Section 6279, Comp. Laws 1913, contains the following: One who wrongfully detains a thing is an involuntary trustee thereof for the benefit of the owner.

Section 6280 is as follows: One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust or other wrongful act is unless he has some other and better right thereto, an involuntary trus-

tee of the thing gained for the benefit of the person who would otherwise have had it.

The evidence, as we view it, clearly shows that the contract for the school land was inadvertently, and by mistake, taken in the name of Schulz, and this, though the testimony shows that Kernkamp had made all the payments above referred to. It must necessarily follow that Schulz held one half of the land in trust for the plaintiff, and that he wrongfully detained from the plaintiff his interest therein, and, for these reasons, an involuntary trust was created, of which the plaintiff was a beneficiary.

It appears to us that certain facts, which are proved by documentary evidence, cannot be explained upon any other theory than that the plaintiff, during all the time from and since the purchase of the school land in controversy, had a right and interest therein. For instance, the sale of the land of Schulz and Kernkamp to Schilling, which is evidenced by the contract for deed between Schulz and Kernkamp and Schilling, which covers and describes the west half of section 31 and this land, and which describes the terms and conditions of said sale of such land to Schilling, has, in no manner, been attacked or disproved. The evidence clearly shows such sale was in fact made.

It conclusively appears that such a contract for deed was entered into. It does not seem reasonable that Kernkamp would enter into a written contract to deliver a title to the land in controversy, unless he, at that time, knew that he had an interest in such land.

Likewise, the lease between Schulz and Kernkamp and Bartz is a document which shows that Kernkamp claimed and understood that he had an interest in the land. It certainly would appear that Kernkamp and Schulz could not join in the execution of these documents, unless they each had a right and authority to execute them, and unless each understood and knew of the interest of the other.

When these facts are taken into consideration with all the testimony adduced by plaintiff, it conclusively shows that he made the payments to which he testified. The conclusion is irresistible that he did purchase in the manner stated by him, a half interest in the land in controversy, and that the title to the land and contract of purchase from the state was inadvertently taken in the name of Schulz.

There is no other theory upon which the documentary evidence, on

behalf of plaintiff and his testimony, as a whole, can be explained. It is true that plaintiff produces no exhibits such as checks, receipts, etc., to show the payments which he made. This, however, is easily explainable in view of the statute which prevents the introduction of testimony relative to the transactions with the deceased.

Plaintiff, in all probability, testified as to the payments made, in the manner in which he did, in order that his testimony might not be in conflict with the statutory rule above referred to. In view of said rule, his oral testimony should not be excluded nor disregarded on the ground that it was not the best evidence. For, when it is taken in connection with the documentary evidence, it appears to have considerable weight, and we think the trial court was justified in taking it into consideration.

On the other hand, the fact that several of the tax receipts were in Schulz's name, and that the receipts for the payment of the first three payments on principal and the payments on interest were in Schulz's name, is not necessarily absolute proof that he had the entire interest in and title to such land. Such receipts are but prima facie proof of the facts recited in them, which may be fully disproved by other competent evidence.

All of these matters might be true, and yet he would be holding a part of the land in trust for the plaintiff. Schulz might have title to the land in his name, and may have receipts for the payments of principal, interest, and taxes, and yet one half of such payments may have been made to him by the plaintiff. This could be true, and, from the testimony as a whole, we think it is true.

We are of the opinion that the testimony of the plaintiff, as a whole, including the documentary testimony in his behalf, and including the documentary evidence contained in exhibit "S," above referred to, conconclusively and clearly shows that plaintiff did purchase a half interest in the land in controversy at the school-land sale, and that he has made the payments upon the principal, interest, and taxes, to which he has testified.

If this be true, it must follow that, though the title of the land was exclusively in Schulz, he held a one-half interest therein, in trust for this plaintiff, subject to the plaintiff's duty to continue to make his proportionate payments on the balance remaining due from time to time.

The last two principal payments were made by the defendant herein,

and she also paid some interest. One half of these amounts will necessarily have to be repaid to her by this plaintiff. It is also clear, from what has been said, that the plaintiff is entitled to one-half interest of the net proceeds of the crop produced upon the land in controversy, for the year of 1918, and that such interest in such crop is properly chargeable against the defendant.

We think there is no merit in the claim of defendant that the plaintiff's complaint declares upon an expressed trust. We think the facts therein stated can and should be said to constitute a basis, which will support a resulting or involuntary trust. There may be courts which would draw a different distinction, but refined distinctions, quite too frequently result in a denial of justice.

If Kernkamp, in this case, to the extent he testified, furnished money to pay one half of the payments and interest and the taxes, and this, with the knowledge of Schulz, it is certain that Schulz did not become the sole owner of the land. He owned only half of it, and the other half, under the clear and convincing testimony of this record, belonged to Kernkamp, for whom Schulz must be held to have held it in trust.

We have examined each of the errors assigned, and the points relied upon by the appellant, including point six, which has reference to transactions with the deceased person, and we find nothing therein which is sufficient to warrant a reversal of judgment appealed from.

All the evidence offered by plaintiff was competent. He has not attempted to testify or introduce evidence of any transactions with the deceased, in such a manner that such evidence would be in conflict with § 7861, Comp. Laws 1913.

It appears from the record that Mr. Schulz and Mr. Kernkamp had, for a very long period of time, transacted business together. There is nothing in the record to show that those relations were other than of the most amicable nature. There is no charge of overreaching or deceit by either party, and we are quite well satisfied there was none.

We think the judgment should be affirmed.

It is affirmed, and the respondents are entitled to their statutory costs and disbursements on appeal.

BRONSON and ROBINSON, JJ., concur.

CHRISTIANSON, Ch. J. (concurring specially). The trial court found that the plaintiff paid one half of the purchase price of the land involved in this litigation, and that Wm. Schulz paid the other half. While my mind is not altogether free from doubt, I am not prepared to say that such finding is erroneous; and am rather inclined to the view that it is in accord with the weight of evidence. The facts found by the trial court bring the case squarely within the purview of § 5365, Comp. Laws 1913. I fail to see, however, where §§ 6279 and 6280, Comp. Laws 1913, have any application.

BIRDZELL, J. (concurring). I concur in an affirmance on one ground stated in the principal opinion and which is expressed in paragraph 1 of the syllabus.