W. G. SANFORD v. EDWARD H. SANFORD, Appellant, Frank Sanford, Ella R. Sanford, J. E. Baker, A. G. Pettingill, and W. O. Thompson.

(153 N. W. 412.)

**Action to quiet title — heirs — partition — exclusive ownership — real estate — title to — trial de novo — findings and conclusions — title held in trust for heirs.**

Action to quiet title to real property, and to partition same among certain heirs at law of one S., deceased. Appellant, who is one of such heirs, asserts exclusive ownership in one of the quarters involved, and the sole controversy relates to the title to such quarter. Upon a trial *de novo* in the supreme court, it is *held*, in accordance with the findings and conclusions of the trial court, that such land belongs to the heirs, and that any title acquired by appellant thereto is held by him in trust for such heirs.

Opinion filed May 12, 1915. Petition for rehearing June 23, 1915.

Appeal from District Court, Dickey County, *Frank Allen, J.*

Action to quiet title to real property and to partition the same among certain heirs. From a judgment in plaintiff's favor, defendant Edward H. Sanford appeals.

Affirmed.

*Watson & Young* and *E. T. Conmy* and *Webb & Brouillard,* for appellant.

To establish a resulting trust in real estate by parol testimony, the evidence must be clear, convincing, and satisfactory, and of such a character as to leave in the mind of the judge no hesitation or substantial doubt. Carter v. Carter, 14 N. D. 66, 103 N. W. 425; Rev. Codes 1899, § 3386; Smith v. Security Loan & T. Co. 8 N. D. 451, 79 N. W. 981; Jasper v. Hazen, 4 N. D. 1, 23 L.R.A. 58, 58 N. W. 454; Riley v. Riley, 9 N. D. 580, 84 N. W. 347; McGuin v. Lee, 10 N. D. 160, 86 N. W. 714; Sargent v. Cooley, 12 N. D. 1, 94 N. W. 576.

There was no writing—therefore no express trust. Carter v. Carter, 14 N. D. 66, 103 N. W. 425; Cardiff v. Marquis, 17 N. D. 110, 114 N. W. 1088.

The deed names a grantee and the record identifies this appellant as the person intended to be named. Woodward v. McCollum, 16 N. D. 42, 111 N. W. 623; Donovan v. Welch, 11 N. D. 113, 90 N. W. 262; Rogers v. Manley, 46 Minn. 403, 49 N. W. 194; Lyman v. Gedney, 114 Ill. 388, 55 Am. Rep. 871, 29 N. E. 282; Chandler v. Wilson, 77 Me. 76; Parker v. Chancellor, 78 Tex. 524, 15 S. W. 157; Smith v. Gillum, 80 Tex. 120, 15 S. W. 794; Begg v. Anderson, 64 Wis. 207, 25 N. W. 3; Newton v. McKay, 29 Mich. 1; Henniges v. Paschke, 9 N. D. 489, 81 Am. St. Rep. 588, 84 N. W. 350; Thompson v. Speck, 2 Tenn. Ch. App. 759.

Deeds have been held good where the Christian name was entirely omitted, the grantee being allowed to show *aliunde* that he was the person intended. Webb v. Den, 17 How. 576, 15 L. ed. 35; Fletcher v. Mansur, 5 Ind. 267; Newton v. McKay, 29 Mich. 1.

A mistake in the Christian name does not invalidate the deed. Middleton v. Findla, 25 Cal. 81; Nixon v. Cobleigh, 52 Ill. 387; Merchants' Bank v. Spicer, 6 Wend. 443; Fanshawe's Case, F. Moore, 228; Zann v. Haller, 71 Ind. 136, 36 Am. Rep. 193; Irwin v. Longworth, 20 Ohio, 581; Salmer v. Lathrop, 10 S. D. 216, 72 N. W. 570; Morse v. Carpenter, 19 Vt. 615; 9 Am. & Eng. Enc. Law, 133.

*E. E. Cassels,* for respondent; *G. N. Williamson* (of counsel), for Frank and Ella Sanford.

The deed was held in trust by appellant, for E. Sanford and his heirs. Gates v. Kelley, 15 N. D. 639, 110 N. W. 770.

The deed was taken in lieu of foreclosure of the mortgage. If the intention at the time was to take the deed in the name of E. Sanford, then it, in effect, runs to and in his name, and must be so held. Comp. Laws 1913, § 6280; Brookings Land & T. Co. v. Bertness, 17 S. D. 293, 96 N. W. 97; Gates v. Kelley, 15 N. D. 639, 110 N. W. 770; Widman v. Kellogg, 22 N. D. 396, 39 L.R.A.(N.S.) 563, 133 N. W. 1020.

Appellant never made any claim to this tract until suit was commenced. Comp. Laws 1913, § 5365; Dalrymple v. Security Loan & T. Co. 9 N. D. 306, 83 N. W. 245; Smith v. Security Loan & T. Co. 8 N. D. 451, 79 N. W. 981; Fleischer v. Fleischer, 11 N. D. 221, 91 N. W. 51.

The title of E. Sanford for twenty-seven years, and the payment by him of the taxes, shows good title. Comp. Laws 1913, § 5471; Power v. Kitching, 10 N. D. 254, 88 Am. St. Rep. 691, 86 N. W. 737.

The title being in him, his possession is presumed. Comp. Laws 1913, § 7365.

Appellant is estopped to set up or claim title at this late date. Engholm v. Ekrem, 18 N. D. 185, 119 N. W. 35; Kenny v. McKenzie, 25 S. D. 485, 49 L.R.A.(N.S.) 782, 127 N. W. 597.

Fisk, Ch. J. This litigation arose in the district court of Dickey county and is a suit to quiet title to four tracts of land, and to partition the same between the four heirs of one E. Sanford, deceased. But one quarter, to wit, the northwest quarter (N. W. ¼) of section seven (7), township one hundred thirty-one (131), range sixty-three (63), is involved on this appeal, it being conceded that the other three tracts belong to the four heirs who are parties to this action. Plaintiff contends that the tract in dispute belonged to Edward Sanford, deceased, at the time of his death, and that, such decedent having died intestate, the same now belongs to his heirs. The defendant E. H. Sanford contends, on the contrary, that he is the owner of this tract, and the sole question in controversy is as to which of these contentions is correct. Plaintiff had judgment in the court below, and defendant

E. H. Sanford has appealed therefrom and demands a trial *de novo* in this court.

A more detailed statement of the facts is deemed advisable. Edward Sanford, who died intestate in March, 1900, was the husband of Mary S. Sanford (who departed this life in June, 1905), and the father of the plaintiff, W. G. Sanford, and of the defendants Ella R. Sanford, Frank Sanford, and Edward H. Sanford (the appellant). He left a large estate consisting of about 120 quarter sections of land lying in the states of South Dakota, Nebraska, Iowa, and three or four quarters in North Dakota, and other property. In lieu of a will he left the distribution of his property to the probate court to be distributed according to the law of descent. After his death the heirs discovered among his papers a written document designated as "Exhibit 9," which reads as follows:

This is to show that all things pertaining to my home property, consisting of house, lots, barn, outbuildings, and all in the house and buildings, pictures, books, furniture, clothes, provisions, horses, carriages, cow, and every article in said building or on said premises, belong to my wife, Mary S. Sanford; also loan 3416 belongs to my daughter Ella, also 3417 belongs to my son W. G., also loan 3391 belongs to my son Frank.

This was thus done to make them equal to what I have given to my son E. H.,—who has received schooling in Europe,—in Dakota, and $2,400 I recently paid for him in Hogue estate, much more than any other child including the above loan.

I have left no will, the court will distribute equitably.

(Signed) E. Sanford.

The heirs gave full effect to the intention of the decedent as thus expressed by turning over to the heirs mentioned the items of property thus enumerated. The widow, Mary S. Sanford, left a will devising and bequeathing her entire estate to the four children.

The plaintiff, W. G. Sanford, brought this action, as before stated, to partition the four tracts in Dickey county among the four heirs. The defendants Baker, Pettingill, and Thompson were joined as de-

31 N. D.—13.

fendants for the purpose of clearing the record title. These defendants make no claim in this action.

The appellant, E. H. Sanford, answered separately, admitting that the three other heirs are equal owners with him in three of the tracts, but that as to the quarter above described he denied that they possessed any interest therein, and by way of counterclaim he alleges that he is the owner in fee under a conveyance from one Levi Wolfersberger 'of date December 2, 1885, and he asks that the title to said tract be quieted in him.

Defendants Frank and Ella R. Sanford answered jointly, denying that their codefendant E. H. Sanford was the owner of said tract, and alleging that the same belonged to the estate of their father, and further, that any title acquired by E. H. Sanford was in trust for his father, E. Sanford, the deceased, and they pray that judgment be entered as prayed for in the complaint.

The proof shows that E. Sanford, the deceased, earlier in his career, was a practising attorney, and that from 1892 until the time of his death, in 1900, he was engaged principally in negotiating mortgage loans. His residence and place of business were at Morris, Illinois. He was assisted in his business at various times by different members of his family and he also had outside clerical assistance. Up to 1884 he transacted a mortgage loan business with a man by the name of Holmes, who was located in Aberdeen, Dakota, under the firm name of Sanford & Holmes. In 1883 or 1884 the appellant, E. H. Sanford, who was the eldest son, established himself, or was established by his father, in Aberdeen, where he engaged in the mortgage loan business in conjunction with his father. He solicited the loans and forwarded the loan papers to his father in Illinois, who negotiated the same, and the profits or commissions arising therefrom were divided equally between the father and the son. Among the loans thus negotiated was one for a man by the name of Wolfersberger, which loan was negotiated by the father to one William Hogue. After such loan was made Wolfersberger left the country and defaulted in the payment of such loan, as well as on the taxes upon the property, which is the tract here in dispute. The father, E. Sanford, thereafter paid and took up the loan from Hogue, and forwarded the papers to his son, the appellant, in Aberdeen, for foreclosure. Later, the son procured from Wolfers-

berger a warranty deed of the premises running to "C. H. Sanford," but which we shall assume, for the purposes of this case, was an error, and that it was the intention that such deed should run to the appellant.

It appears that appellant in the course of his business conceived the idea of purchasing some of these quarters as an investment on his own account, and to this end he borrowed from one Isaac Hogue certain moneys with which to make such purchases, and the proof shows that he executed and delivered four promissory notes of $800 each, secured by mortgages upon as many quarter sections of land in Brown county, South Dakota. Appellant's father procured these loans for his son, and the proceeds thereof were left in his custody to be paid out as appellant needed them, and the latter testified that but $2,800 thereof was accounted for by his father to him. It is also undisputed that of this sum appellant's father paid and satisfied three of such notes and mortgages, amounting to $2,400, which is the sum mentioned in "Exhibit 9" as having been advanced to the appellant. The proof is not entirely clear as to the state of the account between the appellant and his father at the time of the latter's demise, but appellant testifies that he thinks such accounts would about balance. He says, "I owed my father money at that time and he owed me money. I do not know what the result of an accounting would have been between us,—whether there would be a balance in my favor or a balance in his favor. One would be about equal to the other."

It is appellant's contention that he purchased and paid for the tract in controversy out of his own funds procured from the moneys borrowed from Isaac Hogue; but of this the evidence is not at all satisfactory, and the learned trial court, who had an opportunity of seeing and hearing the witnesses testify, made findings of fact adverse to appellant's contention, and such findings have strong support in the record. The proof is quite clear and satisfactory that appellant's father paid to the estate of William Hogue, who held the Wolfersberger loan, the sum of $463 in satisfaction thereof, and it nowhere appears that this money was furnished by appellant. Indeed, the correspondence between appellant and his father which is contained in the record quite strongly negatives this fact, and tends to show that in procuring the deed from Wolfersberger the appellant was acting

for his father or for the William Hogue estate. If appellant's contention is correct it is strange that nothing is disclosed in the correspondence between himself and his father, or in his father's books of account, corroborating him. The gist of such correspondence with reference to the Wolfersberger loan is as follows: In a letter from appellant to his father he writes: "Wolfersberger is in Pennsylvania, and two or three weeks ago I heard from him to the effect that he would execute a deed to the place if I would assure him that there would be no extra costs or expenses on him for so doing. I expect everyday to receive the deed from him. If it don't come within a short time, I shall foreclose; but I much prefer a deed which cuts off equity of redemption, and which furthermore saves the expense of advertising and sheriff's fees."

Appellant received a letter from his father as follows:

Dear Son:—

Yours of the 3d inst. is received concerning the above loan. I had supposed that this was already in process.

They were in Saturday asking about it. Of course, if you can avoid the expense of ad. and sheriff's fees better do so.

Appellant again wrote his father: "As I have a warranty deed from Wolfersberger for his claim, it is therefore unnecessary to foreclose on this."

And again:

Dear Father:—

Replying to yours of February 2d asking what further had been done in above loan. After you sent me the papers for foreclosure, I got a warranty deed from Wolfersberger by paying him about $5 in cash.

If it was appellant's money that was used in satisfying the Wolfersberger loan to the William Hogue estate, as he would have us believe, it is somewhat strange that such loan papers were not delivered to him. The undisputed proof shows that they were found in the safe of his father after the latter's death, and plaintiff testified that he

thinks appellant was present when they were thus found, and that appellant made no claim to that land or to those papers at that time. The plaintiff, as well as his sister and brother Frank, all testify that appellant never made claim to this tract of land until after the commencement of this action. Moreover, the testimony discloses that appellant assisted his brother and sister in making a list of the lands of their father after his death, and that the tract in controversy was included in such list, and that appellant made no claim as owner thereof. The proof also discloses that the father, for many years prior to his death, paid the taxes on this quarter, and that after his death the heirs or the administrator of the estate paid such taxes for many years. It is also a significant fact that appellant attempted, through a friend of his in Chicago, to procure a tax deed of the quarter in dispute. This is inconsistent with his claim of ownership through the Wolfersberger deed. Appellant testified, first, that such friend, one W. O. Thompson, purchased that land at a tax sale for himself. But he afterwards admitted that it was purchased under his direction, and that the subsequent taxes were paid by Thompson with money furnished by appellant. He testified: "In other words, I was trying to get him a tax deed on the lands which I claimed to own at that time. I claimed to own it and did own, but I did not object to him taking a tax deed on it." And appellant admits that the property was redeemed by the estate out of moneys belonging to it. "Exhibit 10" contained in the record is a letter written by appellant to the treasurer of Dickey county, dated January 25, 1901, in regard to taxes upon three different tracts of land, including the tract in controversy. The letter indicates that a check was inclosed to pay taxes on these tracts, and among other things the letter states: "Kindly issue your receipts for said tracts in the name of 'The heirs of Edward Sanford, deceased,' and return said receipts to me at your early convenience." The record also discloses a letter written by appellant to "Dear Mr. Thompson" as follows: "Herewith inclosed find Chi. draft payable to your order for $23.90. Will you kindly send Hon. Hans Lee, treasurer of Dickey county, at Ellendale, North Dakota, the 1907 taxes (sale of December, 1908) $21.92, plus $1.98 penalty for delinquency, on N. W. ¼ of Sec. 7, T. 131, N. R. 63, Dickey county, N. Dak., being particular to state that you pay said taxes as subse-

quent, *i. e.*, to protect your tax sale certificate upon the same land for the 1906 taxes (sale of December, 1907). When you get returns from him kindly let me know."

Another circumstance disclosed by the testimony which tends to re-fute appellant's contention that he purchased such tract from Wolfers-berger on his own account is his testimony to the effect that as soon as he saw the statement in "Exhibit 9," which his father left, he im-mediately concluded that his father had made him a present, not only of the $2,400, *but had given him the Dakota lands that stood in his name.* Why should he have arrived at such a conclusion if he owned in his own right the quarter in controversy? He testified: "I made the remark as soon as I saw that statement of $2,400 that father had made me a present of that; that he had now given me the Dakota lands that were in my name."

There are other circumstances disclosed in this record which strong-ly tend to refute appellant's contention, but we shall not take the time nor the space necessary to refer thereto. Suffice it to say that we are convinced to a moral certainty from this record that the findings of the trial court to the effect that appellant acquired title to this tract from Wolfersberger in trust for his father are correct.

In conclusion, we are agreed that appellant took the deed from Wolfersberger in trust for his father in order to obviate the expense of a foreclosure of the mortgage. Under these facts he became a trus-tee of the title by operation of law. In brief, the principle recognized in Gates v. Kelley, 15 N. D. 639, 110 N. W. 770, is controlling of the case at bar.

Judgment affirmed.


## On Petition for Rehearing.


FISK, Ch. J. A voluminous petition for a rehearing has been filed by appellant which in the main is merely a rehash of the points raised in his brief. We have duly considered the same and fail to discover any sufficient reason for granting a rehearing.

Our attention is therein directed to a few errors in our statement of facts in the opinion, but as we view it these are not of controlling im-portance as they in no manner materially affect the result. It is no

doubt true, as stated in the petition, that we were in error in saying that "E. Sanford *thereafter* paid and took up the loan from Hogue, and forwarded the papers to his son, the appellant, in Aberdeen, for foreclosure. *Later,* the son procured from Wolfersberger a warranty deed of the premises," etc. The record appears to disclose that the Hogue estate still held the first mortgage at the time foreclosure proceedings were directed by appellant's father, and that the deed was obtained from Wolfersberger by appellant prior to the time his father paid and took up the loan. However, the action was tried and the appeal argued upon the theory that, assuming the Wolfersberger deed was intended to run to appellant, it conveyed the title, either to him in his own right or to him in trust for his father, and not to the Hogue estate. In other words, the court was asked to decide merely whether appellant or his father was the owner of the tract. The overwhelming weight of the testimony tends to show that appellant's contention is not true. The Hogue estate is not a party and makes no claim of title, and when appellant's father paid and satisfied the first mortgage running to the Hogue estate, it left him the holder not only of the second mortgage, but he was subrogated to the estate's interest under the first mortgage.

Another error which crept into the opinion in the statement of facts is that wherein it is stated that "the plaintiff, as well as his sister *and brother Frank*, all testify that appellant never made claim to this tract of land until after the commencement of this action." We were in error in including the name of the brother Frank in the above statement, as it appears he did not testify as a witness, and the opinion is modified accordingly.

The petitioner is mistaken in thinking that we overlooked the rule announced in Carter v. Carter, 14 N. D. 66, 103 N. W. 425. We decided the case in the light of the presumption in appellant's favor which arose from the fact that the deed runs to him, but we think such presumption was clearly overcome by the evidence which satisfied us to a moral certainty of the truth of respondent's contention.

There may be one or two other minor misstatements of fact in the opinion, but if so they are of no controlling importance, and need not be noticed.

The fact that we did not expressly refer to the last contention in

appellant's brief, to the effect that a partnership existed between appellant and his father and that in any event it should be held that the deed was taken by appellant from Wolfersberger in trust for such partnership, and consequently that appellant is the owner of one half of the tract as such former partner, and that he inherited one eighth as heir, is because such contention was not urged here with much seriousness, and we deemed it unnecessary to specially refer thereto. Even if such partnership existed, which fact is denied by respondent, it appears that such partnership related merely to the negotiating of loans, and the act of purchasing this Wolfersberger title was not within the scope of the partnership business. Again, appellant's main contention, that he took this deed in his own right, is, of course, wholly inconsistent with his later contention that it was taken on behalf of the alleged partnership aforesaid.

The petition for a rehearing is denied.