NAPOLEON ROBERGE, Plaintiff, Respondent, v. NAPOLEON
Z. ROBERGE et al., Defendants, Esdras Roberge and Anne Ro-
berge Alone, Appellants.

(180 N. W. 15.)

**Appeal and error — in trial to court under Newman Act supreme court
presumes findings based on proper testimony.**

1. In an action under the Newman Act (Comp. Laws 1913, § 7843), prior
to the amendment of chap. 8, Laws 1919, the supreme court upon appeal re-
views the proper testimony in the record, and it is to be presumed that the
findings of the trial court are based upon proper testimony in the record, un-
less the contrary is made to appear.

**Trusts — resulting trust adjudged in favor of husband, who bought and
paid for land title to which was taken in his wife's name.**

2. In an action to declare a deed a deed in trust and to determine adverse
claims, where the trial court has found that the husband, the plaintiff, bought
320 acres of land in 1901 and took the title thereto in the name of his wife,
and that such husband farmed, cultivated, and improved the same and alone
paid all of the consideration therefor; and where it appears from the proper
testimony in the record that such findings are amply sustained, and that the
presumption of gift or settlement arising from the relations of the parties
(husband and wife) is negatived by affirmative evidence in the record, and that
such deed was not so made for any purpose of avoiding claims or demands
against the husband, it is *held* that a resulting trust arose in favor of the
husband, pursuant to § 5365, Comp. Laws 1913.

Opinion filed October 19, 1920. Rehearing denied November 9, 1920.

Action in District Court, Rolette County, *Buttz, J.*, to declare a
deed a deed in trust and to determine adverse claims.

From a judgment in favor of the plaintiff, two of the defendants
have appealed and demand a trial *de novo*.

Affirmed.

*Duncan J. McLennan* and *Henry G. Middaugh,* for appellants.

In order to overthrow the presumption in favor of defendant's title
in a case such as this, the plaintiff must have more than a preponder-
ance of the evidence. Carter v. Carter, 14 N. D. 66, 103 N. W. 425;
Jasper v. Hazen, 4 N. D. 1, 23 L.R.A. 58, 58 N. W. 454; Riley v.
Riley, 9 N. D. 580, 84 N. W. 347; McGuin v. Lee, 10 N. D. 160, 86
N. W. 714; Sargent v. Cooley, 12 N. D. 1, 94 N. W. 576.

A trust must result, if at all, when the papers and the title pass. Barnard v. Jewett, 97 Mass. 87; Davis v. Wetherell, 11 Allen, 19, note; Roberts v. Ware, 40 Cal. 634; McClure v. Doak, 6 Baxt. 364; Gee v. Gee, 32 Miss. 190; Forsyth v. Clark, 3 Wend. 637; Page v. Page, 8 N. H. 187; Brown v. Cave, 23 S. C. 251; Hollida v. Schoop, 4 Md. 465, 59 Am. Dec. 88; Lehman v. Lewis, 62 Ala. 129.

*Verret & Stormon,* for respondent.

Witnesses who are not parties to the suit are not disqualified by statute, and may still testify as to conversations held with the deceased which are otherwise admissible. Truman v. Dakota Trust Co. 29 N. D. 456, 151 N. W. 219.

There was a resulting trust in favor of the plaintiff under the provisions of § 3365, Comp. Laws 1913. Carter v. Carter, 14 N. D. 66; Hickson v. Culbert (S. D.) 102 N. W. 774; Sutton v. Whatstone (S. D.) 112 N. W. 850; Graham v. Selbie (S. D.) 67 N. W. 831; Sing You v. Wong Free Lee (S. D.) 92 N. W. 1073; Doll v. Doll (Neb.) 147 N. W. 471; Doll v. Doll (Neb.) 155 N. W. 226; Re Mahin (Iowa) 143 N. W. 420; Sanford v. Sanford, 31 N. D. 190, 153 N. W. 412; Schmidt v. Scanlan (S. D.) 144 N. D. 128; Currie v. Look, 14 N. D. 482, 106 N. W. 131; Watt v. Morrow (S. D.) 103 N. W. 45; Kernkamp v. Schulz (N. D.) 176 N. W. 108.

BRONSON, J. *Statement.*—This is an action to declare an absolute deed a deed in trust, and to determine adverse claims in 320 acres of land. The substantial facts, so far as the same are deemed necessary to be stated, are as follows: The plaintiff, now about seventy years old, was married to his wife, Virginie, in 1877. She died in December, 1909, leaving as the result of such marriage six children, the defendants herein, only three of whom have contested this action, and only two of whom have appealed from the decision rendered by the trial court. In October, 1901, the land involved was purchased from one Coloton for $1,400, and deeded to the wife, Virginie. This consideration was paid by $200 in money borrowed, and by notes secured by a mortgage deed upon this land, signed by Virginie and her husband, the plaintiff. The notes for $100 each fell due in consecutive years commencing in November, 1902. The plaintiff testified that when they married, his wife had no property, and he, about $200 or

$300. They lived in Massachusetts for about seventeen years and then came to North Dakota. He had another half section of land in his own name. In 1901 he learned that the land involved was for sale; he bought it, borrowed $200 to make the first payment, and thereafter paid the notes of $100 each until they were all paid out of his own moneys; most of these payments were made from moneys received in the operation of a threshing machine. Later, buildings were constructed on this land. There he and his wife lived and there she died. He broke the land, cropped it, received the crop proceeds, paid the taxes, and has occupied it ever since. At the time of the purchase he was advised by John Burke, then an attorney, now United States Treasurer, and also a county commissioner, to put the title in his wife's name. He told his wife. She said she would sign her name, but that the farm would belong to him and not to her. That she would sign her name for trust and for protection and for our old age. (The husband and wife were French and spoke French.) Philias, a brother of the plaintiff, testified that at the time the deed was made the wife said that she did not own the land, that it was in her name, but she never paid a cent for it; that her husband paid for it. That the plaintiff borrowed money from him to pay for this land; that he told him he was going to buy this land and pay for it out of the threshing machine. The witness Wagner testified that he was in the real estate business in 1901 and sold this land to the plaintiff; that he made the deal with the plaintiff; had no dealings with the wife; the plaintiff made the loan from his firm to apply on the purchase price. The daughter Anne testified that the mother picked out the place on the land for building the home; that the mother kept the money for everything that was sold on the place; that it was given to mother and she would keep it for father. That she has seen her brother haul grain and bring the money home and give it to mother to put in a box; that afterwards she would give it to Ovilar to make payments on the land. Estras, a son, testified that his mother had charge of this box; that his father put money in that box and when he would pay anything he took it out of that box. That her father called this land mother's land.

Louis Roberge, a brother, testified that the plaintiff had stated several times that the land belonged to his wife. That in 1905 there were some charges on this land, but that he had paid some of them with

profits earned with his threshing machine. Plaintiff testified concerning the box that it was kept only for small change, and that his wife put change money it it. He further testified that the land is not very good soil, that the southeast quarter is worth about $3,000, with the buildings on it, and the other quarter about $2,500 to $2,800.

This action was started by the plaintiff in 1915 to have the deed declared a trust and to quiet title in the land. Three of the children, Napoleon, Estras, and Anne, answered, claiming each an undivided one-ninth interest therein. In 1916 the trial was had. Finally, in January, 1920, findings were made by the trial court that the plaintiff purchased, farmed, cultivated, and improved this land and paid the consideration agreed therefor; that a trust resulted in favor of the plaintiff in such land, and that the plaintiff is the owner in fee thereof. Pursuant to such findings judgment was entered, from which two of the children, Estras and Anne, have appealed and demand a trial *de novo* in this court.

*Contentions.*—The appellants contend that the testimony of Ovilar, Philias, and the daughter, Virginie, concerning the transactions had with the deceased mother, was incompetent under the provisions of the statute (Comp. Laws 1913, § 7871); that the record fails to show proof so clear, specific, and satisfactory as to establish a resulting trust; that the purchase price of the land, in fact, was paid out of the profits from the land itself; that in truth the consideration was paid or contributed by the wife as well as the husband, so that the principle concerning resulting trusts cannot apply; that the record discloses rather a trust for both of the parties for their old age, and an intent to place the title where the land would be clear from the debts of the plaintiff. The respondent further contends that the record clearly supports the findings of the trial court of the existence of a resulting trust free from any showing whatever, of any intent to make a gift or advancement of the land to the wife, or to protect the plaintiff from any claims or demands against him.

*Decision.*—This action was tried before the court under the so-termed Newman Act (Comp. Laws 1913, § 7846) prior to the amendment of chap. 8, Laws 1919. Under the act all of the evidence offered shall be received. The record accordingly is before this court with both the proper and improper testimony included. This appeal is

here, therefore, for review upon the proper testimony in such record, with the usual weight and influence accorded to the findings of the trial court that obtain in such cases. It will be presumed that such findings are based upon proper testimony in the record unless it appears to this court upon the review of the record that the contrary is the case. See Jasper v. Hazen, 4 N. D. 1, 23 L.R.A. 58, 58 N. W. 454; Christianson v. Farmers' Warehouse Asso. 5 N. D. 438, 444, 32 L.R.A. 730, 67 N. W. 300; Carter v. Carter, 14 N. D. 66, 103 N. W. 425.

Upon the oral argument the respondent practically conceded that the testimony of the sons Ovilar and Philias, and the daughter Virginie, concerning transactions had with their deceased mother, as herein involved, were incompetent under the statute (Comp. Laws 1913, § 7871), but contended that the evidence otherwise is amply sufficient to sustain the findings of the trial court. In view of the conclusion to which this court has arrived upon the record, it is deemed unnecessary to pass upon or discuss the competency of such testimony under the statute. The court is satisfied that the findings of the trial court are amply sustained without any consideration of such testimony or the alleged hearsay testimony to which the appellants have also objected.

The principal contention of the appellants is that the proper evidence in the record does not disclose by that clear, specific and satisfactory proof required in such cases, a resulting trust under the statute.

Section 5365, Comp. Laws 1913, provides: "When a transfer of real property is made to one person and the consideration therefor is paid by or for another, a trust is presumed to result in favor of the person by or for whom such payment is made."

In establishing such trusts this court has heretofore held that the evidence must be clear, convincing, and satisfactory, and of such a character as to leave in the mind of the chancellor no hesitation or substantial doubt. Carter v. Carter, supra; Sanford v. Sanford, 31 N. D. 190, 198, 153 N. W. 412; Kernkamp v. Schulz, 44 N. D. 20, 176 N. W. 111.

We are satisfied that, within this rule as stated by this court, the proper testimony in this record amply shows that the entire consideration for the purchase of this land was paid by the plaintiff, the hus-

band, and by him alone. By its findings, the trial court has so found, and it is to be presumed that it followed the rule above stated. The record further fully discloses that the husband not only paid the consideration, but he bought, improved, farmed, and in every way treated the land as his own ever since the date of the deed therefor. The evidence, slight as it is, to the effect that the moneys earned from this land assisted in the payment of this consideration. That the wife, as such, aided and helped in so paying such purchase price. That the land was called her land does not discredit the major thought evident throughout this transaction, that the husband was considered and treated as the owner, in fact, from beginning to the end. There is no showing at all that the husband did not treat this land the same as the other land owned by him in his own name. The earnings from this land, as far as this record shows, were considered as his earnings just the same as earnings from his other lands, no matter whether the same were, as they necessarily would be, aided and assisted by the co-operative efforts of his wife and children.

The presumption stated in the statute therefore obtained; provided the presumption of gift or settlement arising from the relation of the parties (husband and wife) is overcome by the evidence in the record. See Currie v. Look, 14 N. D. 482, 484, 106 N. W. 131, note in 127 Am. St. Rep. 252. The evidence, however, clearly negatives any such presumption of gift or settlement. It affirmatively negatives any intent of a gift or settlemnet. The record further does not warrant the claim that the deed was made for the purpose of avoiding claims and demands existing or that might exist against the husband. The language and acts of the parties must be considered in connection with their status in life. They talked French; they were not well versed in English. The inducing cause for so placing the title in the wife was probably the advice of two well-known and well-versed people within their acquaintance, upon whom they placed reliance in such matters. Rather sad is the commentary that this property, comprising with the husband's other property, "the community" in fact, of the husband's and wife's efforts of life, should now, near "the end of his journey," be sought, by anticipation, through descent.

The judgment is affirmed, with costs.

ROBINSON and GRACE, JJ., concur.

BIRDZELL, J. (dissenting). The plaintiff in this case does not rely upon an express trust, for no valid express trust was created. Comp. Laws 1913, § 5364. This section is a misprint. See § 4821, Rev. Codes 1905, for the correct provision. He relies upon a trust which the law implies from the circumstance of the payment of the consideration. Comp. Laws 1913, § 5365. This is a resulting trust implied in law. In such cases the rule is established that the plaintiff's evidence must amount to more than a mere preponderance, for he is seeking to overcome the apparent legal effect of his own act in directing or permitting the title to be vested in another. Carter v. Carter, 14 N. D. 66, 103 N. W. 425. In that case it was stated in the syllabus:

"The proof must be clear, specific, satisfactory, and of such a character as to leave in the mind of the chancellor no hesitation or substantial doubt."

A majority of the members of this court has expressed the opinion that this burden of proof has been sustained by the plaintiff, and has stated the substance of the testimony which is regarded as amounting to the necessary proof. In this the majority members agree with the trial court. A reading of the evidence, however, leaves in my mind a grave doubt as to the correctness of this conclusion. This doubt arises from the facts established by the record with regard to the payment of the consideration, as well as from the testimony of the plaintiff himself with regard to the nature of the transaction when the land was conveyed to his wife.

The consideration was not paid at the time the property was purchased, but was paid later, largely from the earnings of the farming operations upon the land in question. The grantee in the deed was shown to have been an important factor in the operation of the farm. So it was really paid out of the joint earnings of the husband and his wife.

Where a husband causes property to be transferred to his wife or to be taken in his wife's name, a presumption of gift or settlement arises which must be overcome before a court is justified in directing a reconveyance. See Pom. Eq. Jur. § 1039; Perry, Trusts, §§ 143, 147. It does not seem to me that this presumption is overcome in this case.

The testimony of the plaintiff himself goes a long way toward disproving the existence of a resulting trust for his benefit. He testified:

"Well, says I, if I can get the $200 I believe I will try it, and Mr. Wagner commences to make the deed out in my name, and that farm I was going to buy they were mortgaged up lots of times and I didn't want to do any business without getting anybody to look the thing up for me, so I went down to get John Burke. Mr. Burke came to Mr. Wagner's office and he looked things over, and Mr. Wagner asked me if I have any bond. That is all I could remember now. I told him I could get some. Mr. Burke says, 'Mr. Roberge, *why don't you put that in your wife's name,' and Mr. Godfrey says that too.*"

"Q. Both men?"

"A. Both men. He says if there is any bond to be paid you pay that yourself. Then for the reason it will get *it in trust for you in your old age, you and your wife, and I told* Mr. Burke and Mr. Godfrey that *I didn't see no difference between my name and my wife's name.* Mr. Burke told me, he says *if you want to keep it in trust for your old age that is the way you have got to do it.* So they made them papers and I went down home with them papers and I told my wife, 'Here is the property, *for our old age,'* and she says, 'I don't want to have those in my name.' She says, 'I am not supposed to know anything about farming or anything of that kind.' Says I, 'I was advised by the two wisest men in the county to do that *for our protection for our old age.'* My wife replied, she says, 'In this case I sign my own name,' but, she says, 'the farm will belong to you, and not to me.' She says, *'I will sign my name for trust and for protection for our old age.'* She says, first, 'If I die—I don't know whether it will be next year or ten years or twenty years or fifty years. . . . And you don't have no trouble with nobody and I suppose if you die yourself *it will be something for me; it is a trust, those papers for our old age.'* So she signed them, and I sent them to Mr. Burke."

From this testimony it would seem to be clear that if the plaintiff had died before his wife, the grantee in the deed, the heirs could not have established a trust, for the legal title and the complete beneficial interest would have merged in her. In fact, she had a beneficial interest from the beginning, and the most the plaintiff ever had after the original conveyance, according to the legal effect of the transaction as

disclosed by his own testimony, was a charge upon the estate for his own support in old age. See Perry, Trusts, § 152; Pom. Eq. Jur. § 1033. In the light of the plaintiff's own testimony, he surely could not have secured a reconveyance during the life of the grantee, and, as I view the case, he is in no better position to do so after her death.

Viewing the case in this light, I am unable to concur in the majority opinion.

CHRISTIANSON, Ch. J., I concur in the foregoing opinion of Mr. Justice BIRDZELL.