GEORGE R. FOX, Jr., Respondent, v. THOMAS H. FOX, as Administrator of the Estate of George R. Fox, Sr., Deceased, Catherine Fox, Edith Schell, Grace Reed, Grover Fox, Myrtle Hanna, Alta Click, Frances Owens and Thomas H. Fox.
EDITH SCHELL, Grace Reed and Myrtle Hanna, Appellants.
THOMAS H. FOX, Individually and as Administrator, and Grover Fox, Respondents.

(219 N. W. 784.)

**Trusts — title taken under contract — others have interest — trustees for others — terms of trust may be proved by parol evidence.**
1. Where a contract for the purchase of real estate is taken by one in his own name under an agreement with three others to the effect that the title should be so taken and that each of the four should have an undivided one-fourth interest in the land and each should pay one fourth of the purchase price, taxes, etc., such land is held in trust for all where each person has paid his share and the terms of such trust may be proved by parol testimony.

**Witnesses — codefendant called by plaintiff may testify as to decedent's statements in transaction.**
2. Where an action is brought against the administrator of the estate of a deceased person and other defendants, a codefendant when called as witness by the plaintiff may testify as to statements made by the decedent in a transaction between the plaintiff and such decedent.

**Witnesses — action against administrator — codefendant called by plaintiff may testify as to conversations in her presence.**
3. Subdivision 2 of § 7871 of the Code does not disqualify such codefendant from testifying as to a conversation in her presence between the decedent and the plaintiff, and other codefendants interested in a transaction between the plaintiff and the decedent, when she took no part in said conversation.

Opinion filed May 3, 1928.   Rehearing denied June 15, 1928.

Trusts, 39 Cyc. p. 63 n. 50; p. 83 n. 63.   Witnesses, 40 Cyc. p. 2273 n. 12; p. 2328 n. 62.

Note.— (1, 2) As to competency of interested witness to testify as to transaction with deceased in which he did not participate, see annotation in 29 L.R.A.(N.S.) 1179; 28 R. C. L. 499.

Appeal from a judgment of the District Court of Rolette County, *Buttz, J.*

Affirmed.

*Adamson & Wheat,* for appellants.

A county court, even one having increased jurisdiction, has no equity jurisdiction. Mead v. Bank, 24 N. D. 12, 138 N. W. 365.

*Kehoe & Verrett,* for respondents.

"The power of the legislature over the succession and conveyance of land is unlimited. Hence it may authorize an executor or administrator to convey land pursuant to the contract of his intestate." Adams v. Lewis, 5 Sawy. 229, Fed. Cas. No. 60; 1 Church, New Probate Law, p. 968.

"The jurisdiction of probate courts is derived from the Constitution and cannot be enlarged or diminished by the legislature." Re Mousseau (Minn.) 41 N. W. 977.

Burr, J. All of the defendants, save Catherine Fox, are the children of George R. Fox, Sr. Catherine Fox is their mother. George R. Fox, Sr., died in 1922, and Thos. H. Fox was appointed administrator of his estate. It is the claim of the plaintiff that the father and the three sons, George R. Fox, Jr., Thos. H. Fox and Grover Fox hereafter known as the boys, entered into an oral agreement in November, 1908, by the terms of which it was mutually agreed the father was to buy from the state at the public sale which was then advertised certain school land in his own name for the use and benefit of himself and the three boys, "share and share alike and under the terms of which each of the said parties to such agreement was to contribute one fourth of the purchase price of said premises and one fourth of the interest and deferred payments on such purchase price and one fourth of the taxes levied and assessed against said premises;" that the father bought said land at the advertised public sale, taking the contract of sale in his own name; that thereafter he and each of the boys paid regularly and in accordance with the terms of the contract one fourth of the payments of principal, interest, taxes and assessments until the time of the death of the father in 1922; that thereafter each of said boys, and the estate of the father through the administrator, made such payments in the same manner; that all payments due have been so paid;

and there remains but one payment to be made to complete the purchase price of said land.

The plaintiff states that the other defendants claim an interest in said land adverse to the claim herein stated, and asks a decree from the court to the effect that the plaintiff, and the defendants Thos. H. Fox, Grover Fox, and the estate of the father be declared each to have an undivided one-fourth interest in the land, and that the title be thus quieted as against the remaining defendants.

Thos. H. Fox for himself and as administrator and Grover Fox answered each admitting the contract as claimed by the plaintiff and asking for the same relief. Catherine Fox defaulted, and the other defendants denied plaintiff's claim, alleging the land belongs to the estate and that the parties to this action take as heirs according to law. The land involved is described as the N. W. ¼ of section 35, township 159, range 70 west of the fifth P. M.

The district court rendered judgment quieting title in the plaintiff and the defendants Thos. H. Fox, Grover Fox, and the estate as demanded by the plaintiff. The defendants Edith Schell, Grace Reed and Myrtle Hanna, appeal, demanding a trial de novo.

In order to prove the statements alleged and the payments made on the contract, the plaintiff called Thos. H. Fox and Catherine Fox for cross-examination under the statute, and Grover Fox as his own witness. Thos. H. Fox was called to prove the payments made on the contract by the sons and by the estate after the death of the father. The appellants objected "to this witness being called as an adverse witness or being called for the purpose of cross-examination under the statute, for the reason he is not an adverse witness. This contract set up in the complaint is a contract made for the benefit of this person. He is not an adverse party and no adverse judgment can be rendered against him in this action." This witness was also interrogated as to the lease of the land made by him as administrator to Grover Fox one of the defendants, the terms of the lease, and the payments made thereunder to which testimony there was the same objection; but all the testimony was admitted.

Catherine Fox, was called to prove the conversation had between the father and the sons relied upon as constituting the terms of the contract. The appellants objected to the questions "as incompetent, irrelevant,

immaterial, attempting to prove by parol evidence a contract which under the statute must be in writing to be valid, and further it is asking for a conversation between the deceased and these parties that is a privileged communication under the statute." When this witness was being questioned as to subsequent conversations between her and her husband relative to the payment which the boys had made under this alleged contract the appellants objected to the same as "incompetent, irrelevant, immaterial and leading. We object to this witness being called and examined as an adverse witness under cross-examination in this case." The court permitted Catherine Fox to testify.

The defendant Grover Fox was called by plaintiff in rebuttal to testify to the identity of the George C. Fox listed in Exhibit "A"— whether his father or his brother—the affidavit of listing having been made by the witness. There were other witnesses produced but there is no issue to be determined so far as their testimony is concerned.

While there are 12 specifications of error none of them is based upon the act of the court in permitting Catherine Fox to testify as to the contractual conversation between the father and the sons. Specification of error number 5 says:

"That the court erred in admitting over objection the testimony of the defendants Thomas Fox and Grover Fox, they being parties in interest demanding affirmative relief." In this respect we note the record does not show any objection to the testimony of Grover Fox on the ground that he was a disqualified witness, therefore, when we come to review the objections to the competency of the witnesses the specifications of error confine us to the competency of Thos. H. Fox. All the specifications of error are answered by the determination of whether the proffered proof was competent and whether the proof showed a trust was created.

Section 7871 of the Code does not purport to exclude an interested party from testifying. A party may be a witness except that "in a civil action or proceeding by or against the executors, administrators, heirs-at-law or next of kin in which judgment may be rendered or ordered entered for or against them, neither party shall be allowed to -testify against the other as to any transaction whatever with or statement by the testator or intestate unless called to testify thereto by the opposite party." The common-law rule excluding parties from testify-

ing has been abrogated by statute except in the cases and within the limitations quoted.

In this case Thos. H. Fox, a defendant, was called by the plaintiff. It is claimed that calling him as an adverse witness, presumably under the provisions of § 7870, was a subterfuge, considering the allegations of the complaint; that the answer of the witness shows he claims an interest in the land involved similar to the one claimed by the plaintiff and that he joins with him; that their interests are not adverse.

The testimony of the witness offered and received under the objection noted does not in any event come within the prohibition of subdivision 2 of § 7871. After his testimony had showed the time of his father's death and his own appointment as administrator the objection to further examination was made as hereinbefore stated. By this objection the defendants would exclude Thos. H. Fox entirely from testifying. The objection was not well taken. Even if the contention of the defendants be correct that under the circumstances he could not be cross-examined as an adverse witness under the provisions of § 7870, yet the plaintiff could have called him as his own witness. The defendants did not make any attempt to cross-examine nor were they prevented from doing so. The plaintiff does not claim he is not bound by the testimony. Hence it was immaterial whether the witness was called as an adverse witness or as a witness for the plaintiff. His testimony was confined to proving the date of the death of his father, his own appointment as administrator, that since he was appointed administrator he had made payments to the state on the principal, interest and taxes "due under the contract issued by the state to his father," and that the money was secured by himself, his brother Grover and his brother George contributing one fourth of the payments and his taking of the other one fourth from the property of the estate. He also testified that one payment of the principal was paid by him as administrator, the funds being secured in the same way and that the estate received from his brother Grover one half of the crops grown on the land as the landlord's share and that he had divided this share between his two brothers and himself and the estate, giving each one fourth. Under objection he was permitted to testify as to who were the owners of the equitable title. It is clear that no part of such testimony is excluded by subdivision 2 of § 7871 of the Code.

Previous to the giving of this testimony his mother had testified to the conversation which took place between her husband and her three sons relied upon as constituting the contract. At the close of his examination he was asked the following questions:

You heard the conversation related by your mother that occurred at the home of your father on the night before the sale of the school land?

A. Yes.

Q. You were present at that conversation?

A. Yes.

Q. Did that conversation occur there at that time?

A. Yes.

That is all.

No objection was made to this testimony but after the close of his examination a motion was made to "strike out all the testimony of this witness on the ground that it is self-serving, and offered by the witness in support of paragraph three of his separate answer in this case, in which he seeks to have quieted in him an undivided one-fourth interest in the quarter of land involved in this case." Such testimony should not be stricken out. The witness was called by the plaintiff. All the testimony which he offered was competent, relevant and material with the exception of his legal opinion as to who were the owners of the equitable title.

While there was objection to the testimony of Catherine Fox, no error is predicated on its reception. She testified she was in her own home with her husband and the three boys the night before the land was bought; that she heard the four talking about buying the N. W. $\frac{1}{4}$ of section 35 from the state; that her husband said he was going to attend the state land sale and buy this quarter; that he had partly made up his mind he would not buy it for he was afraid he could not handle it alone so Thomas said to go ahead and he and Grover and George and the father would take it on quarters and the father was to buy the land provided "it did not go over $20 an acre but if over that he should not take it so he attended the sale and bought the land;" that the land was to be taken in the name of her husband and the boys

were all to pay their share—"if he bought it they were to pay their share of the principal, taxes and interest." She was then asked: "What was said as to whose name it should be bought in?" And her answer was: "In my husband's name and he would carry it for the benefit of the boys." She testified that her husband and the boys were each to pay a quarter and have a quarter interest and the boys were present and agreed to it and that her husband said: "That would be all right for they could handle it that way." She then testified that shortly prior to the death of her husband she had a conversation with him in which he said "They were getting along all right with the land and the boys had paid their share for the land." She said that she and her husband were in the habit of talking over their business and that about the first of each year after the purchase of the land he had talked with her and told her that the boys had paid him "their one-fourth share for the payment of the land." That about the first of 1922 he had told her that "the boys had paid up all their payments thus far accrued on the land." And that since the death of the father the boys had paid right along each paying one fourth and the administrator the other one fourth. This last was an admission against her own interest and is sufficient if uncontradicted. No one disputes her testimony. This is the testimony relied upon to establish the cause of action. The appellants say such testimony is incompetent. It will be noticed that this testimony does not relate to any transaction or contract which Catherine Fox had with the deceased nor is it claimed that she is a party to the contract sought to be proved. It refers to statements made by him to others and statements made by others to him in connection with a supposed contract between these others and the deceased. There is nothing in this testimony to indicate that the witness in any way participated in this conversation between the father and the sons. Such a party is competent to testify. That a party to an action against an administrator is not disqualified to testify regarding conversations between the deceased and the other parties respecting transactions between the deceased and these other parties when he took no part in such conversation and is merely relating what he heard is well established. See exhaustive note to Mollison v. Rittgers, 140 Iowa, 365, 118 N. W. 512, in 29 L.R.A.(N.S.) 1179.

Again this witness though a party was called by the plaintiff. The

appellants are not in position to object to the plaintiff calling her, for the purpose of this statute is to prevent a party testifying in his own behalf over the objection of the other party; and if the other party be willing to risk the testimony of such witness then the bar is removed. In addition there is no error predicated on this permission. The testimony therefore is before us for consideration.

The appellants say that under the provisions of § 5364, "No trust in relation to real property is valid unless created or declared by a written instrument, subscribed by the trustee or by his agent, thereto authorized in writing." They cite the decisions of this court such as Cardiff v. Marquis, 17 N. D. 110, 114 N. W. 1088. Here the court distinctly states:

"An express trust . . . cannot be created or declared except by a writing subscribed by the trustee."

This statute cited makes provision for the creation of a trust "by operation of law." Section 5365 states:

"When a transfer of real property is made to one person and the consideration therefor is paid by or for another a trust is presumed to result in favor of the person by or for whom such payment is made." In other words is the plaintiff attempting to prove an express trust or a resulting trust? It is true this court in the case of Carter v. Carter, 14 N. D. 66, 103 N. W. 425, says:

"To establish a resulting trust in real property by parol testimony the evidence must be clear, convincing and satisfactory, and of such a character as to leave in the mind of the judge no hesitation or substantial doubt," and this is the general rule.

See also Kendall v. Mann, 11 Allen, 15. But this refers to the quality of proof. The case at bar is clearly distinguishable from the case of Weber v. Bader, 42 N. D. 142, 172 N. W. 72, and the case of McWilliams v. Britton, 48 N. D. 975, 188 N. W. 44. The former case was an attempt to prove a trust by oral contract where the party had purchased school land in his own name, with his own funds. The parties claiming an interest had not contributed any of the consideration. The latter case deals with an express trust where the beneficiary did not pay any of the consideration but where it was claimed an express trust had been established for her benefit. In this case the claim of the plaintiff is, and the evidence tends to show, that the father

and three sons entered into a contract and agreement to buy the land for themselves. It is immaterial whether we call it a partnership affair or a joint venture, or that there was no agreement to create an express trust. Section 5365 does not contemplate such an agreement. See Hickson v. Culbert, 19 S. D. 207, 102 N. W. 776. Each has paid an equal part of the consideration. One of the tests of a resulting trust is whether such trust comes into existence at the very moment the title vests in the grantee. See Fickett v. Durham, 109 Mass. 419; Whitley v. Ogle, 47 N. J. Eq. 67, 20 Atl. 284; Hickson v. Culbert, supra. According to the allegations of the complaint the father, when he received the contract received it for the benefit of the three sons as well as himself. They paid their proportionate share. The trust came into existence at that time. While the transfer was taken in the name of the father the consideration was being paid by the sons for their interest in it. Certainly a constructive trust arises "under operation of law" where one acquires another's property without fraud, and this other pays him therefor. Equity would not permit that such property should be retained by one who holds it. Arntson v. First Nat. Bank, 39 N. D. 408, L.R.A.1918F, 1038, 167 N. W. 760. It is immaterial whether the sons paid their share to the father, and he paid to the state, or whether they paid to the state directly themselves. Naturally they would pay to the father as he was the only one the state knew in the transaction. The contract was taken in the name of the father evidently for convenience. It is not a case of the father establishing a trust for the benefit of the sons. It is a case where the transfer was made to the father for himself and the others. These others have paid their share. In Kernkamp v. Schulz, 44 N. D. 20, 176 N. W. 108 and Roberge v. Roberge, 46 N. D. 402, 180 N. W. 15, this court has held that where the title is taken in the name of one but the consideration therefore is paid by another there is a resulting trust. That the trustee may have an interest in the land and pay the consideration for his interest does not render him any the less a trustee as to the other interests. This is the rule that prevails "where the consideration proceeds from two or more persons jointly, and a resulting trust will arise in proportion to the amount of the consideration which they have respectively contributed." Cutler v. Tuttle, 19 N. J. Eq. 549. As said in Olcott v. Bynum, 17 Wall. 44, 21 L. ed. 570:

"Where the purchase money is all paid by one, and the property is conveyed to another, there is a resulting trust in favor of the party paying. But where he furnishes only a part of the amount paid, no trust arises unless his part is some definite portion of the whole, and is paid for some aliquot part of the property; as, a fourth, a third or a moiety."

It is not as to his own interests he is trustee. He is the trustee for the other interests and all of the consideration for these other interests was paid by the plaintiff and the two defendants Grover and George Fox, Jr.—each for his own. Such allegations show a cause of action and it remains merely to determine whether the testimony is of the quality required by Carter v. Carter, supra. The testimony of Catherine Fox, and the testimony of Thos. H. Fox as to the payments made while he was administrator, are not disputed. If these witnesses be reliable then the trust has been proved. The trial court considered their testimony true and we see no reason for holding otherwise. It is not urged the evidence is insufficient, if admissible.

The judgment of the district court therefore is affirmed.

NUESSLE, Ch. J., and BURKE, BIRDZELL, and CHRISTIANSON, JJ., concur.