28

GOODHOPE, Appellant, v. OVERGAARD, et al, Respondents.
SPENCER, Appellant, v. OVERGAARD, et al, Respondents.

(227 N. W. 380.)

(File Nos. 6514, 6515.   Opinion filed November 8, 1929.)

*Perry F. Loucks,* of Watertown, and *Waggoner & Stordahl,* of Sioux Falls, for Appellants.

*Kirby, Kirby & Kirby,* of Sioux Falls, for Respondents.

FULLER, C. On November 7, 1923, T. B. Goodhope took judgment for debt against Mads N. Overgaard in the amount of $3,445.70, no part of which was thereafter paid except $28. On September 25, 1924, Lyle S. Spencer procured a like judgment against Overgaard for $8,270. On May 6, 1924, Spencer commenced one of the instant actions to set aside certain transfers of real estate made by the debtor, and his action for this purpose was followed by a similar suit commenced by the creditor Goodhope. From an adverse judgment and order denying motion for a new trial, each party appeals and their appeals, being submitted on the same record here, will be considered together, with our mention of the appellant having reference respectively to both appellants. The respondents here include Mads N. Overgaard, the debtor, and Clifford N. Overgaard, Mary Overgaard, and Cora M. Overgaard, his transferees who were defendants prevailing in the trial below.

The principal matter for review is whether the evidence is sufficient to sustain the trial court's findings that the debtor was not insolvent at the time of nor rendered insolvent by the conveyances complained of, and that those conveyances were not made by the debtor with actual intent to hinder, delay, or defraud his creditors. The transfers of respondent Mads N. Overgaard, sought to be vacated, were of four lots in the city of Sioux Falls, one of which was occupied by a store building and the others by dwelling houses. Two of the lots were conveyed January 2, 1923, to the respondent Clifford N. Overgaard, a son of the respondent Mads N. Overgaard, for the assumption by the purchaser of a debt of $10,000 owing by Mads N. Overgaard to the wife of his brother. The debt was partly paid and the balance secured by a settlement satisfactory to and accepted by the creditor. Another lot was conveyed on that date to a daughter-in-law of Mads N. Overgaard in satisfaction of a debt of $6,500 by him owing to her husband. The fourth lot was covered by a third conveyance of March 1, 1923, to Clifford N. Overgaard, in satisfaction by him of an indebtedness of $1,000 owing from Mads N. Overgaard, and the assumption of a mortgage of $3,000 against the property.

To recover below the appellant was obliged to establish, under his burden of proof and by a preponderance of the evidence, either the fact of actual fraud on the part of respondent Mads N. Overgaard or those facts which would establish constructive fraud,

according to the provisions of Laws 1919, c. 209, §§ 4 and 7 (9 U. L. A. pp. 127, 129) reading as follows:

"Section 4. Conveyances by Insolvent. Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration."

"Section 7. Conveyance Made with Intent to Defraud. Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors."

Our first concern under section 4, supra, pertains to the value of the debtor's property on January 2, 1923, the date of the first two transfers covering three of the Sioux Falls properties. At that time Mads N. Overgaard owned six large apartment houses in the Twin Cities, four in Minneapolis and two in St. Paul, the gross income from which, it was testified by one witness, had been $10,000 per month. Those properties were incumbered to the aggregate amount of $640,000, leaving an equity, according to the testimony of certain witnesses, of about $180,000. The trial court found that, on the last-named date, Mads N. Overgaard was worth $200,000 in excess of the Sioux Falls property here in dispute and at least $150,000 above all debts and obligations. In February, 1923, this defendant exchanged his equities in the apartment properties for a note of $200,000 given by one Streeter indorsed by one Rogers. A vigorous attack is made by appellant upon the testimony of these witnesses to the effect that Streeter, at least, was solvent, and that Rogers had not ceased to make substantial payments upon his debts. But the trial court seems to have agreed with appellant in this contention, for it was found below that, on March 1, 1923 (the date of the third transfer covering the fourth lot above mentioned), Mads N. Overgaard was insolvent and had been swindled out of his property by the said Streeter and Rogers. This finding is equivalent to a decision that the $200,000 note was worthless.

With respect to the transfers of January 2, 1923, the question as to the solvency of Streeter and Rogers and the value of the $200,000 note is not of controlling importance. It is true

that, if it were shown that Mads N. Overgaard intentionally and knowingly traded his equity in the apartment properties for a worthless note, in February, 1923, the fact might cast its shadow backward upon his knowledge of a lack of value in his equities on January 2, 1923. But there is nothing in this record to support that reasoning. There was no occasion for the fabrication by the debtor of evidence of a fictitious value of $200,000 in the property. The amount of the judgments here involved approximate $12,000 and interest, no other debts being established except those satisfied by the transfers in dispute.

If we were to concede with appellant that the valuation of $200,000, as fixed by the trial court upon the combined equities in the apartment houses, on January 2, 1923, was without substantial support in the evidence, we would yet be unable to declare that appellant had been prejudiced by that erroneous valuation unless it further appeared that these equities were not of value equivalent to the indebtedness of Mads N. Overgaard on that date. As the plaintiff in the court below had the burden of proving the insolvency of the debtor, at the date of the transfers, or that he was rendered insolvent thereby so, in this court the plaintiff, as appellant, must establish that the finding of the trial court was not only opposed by a clear preponderance of the evidence, but that the error was prejudicial.

An excessive valuation of the property owned by the debtor cannot be said to be material, for the purposes of appeal, unless the clear preponderance of the evidence establishes that the debtor's property was not worth the amount of his debts. This record has been searched in vain for evidence according to which it might justly be said, or fairly demonstrated, that the combined equities in these six apartment houses on January 2, 1923, were worth less than the amount of Overgaard's indebtedness. If there is doubt under the record as to the true and actual valuation, the responsibility is certainly not upon the respondents to dissipate that doubt or to show that they took over the burden of proof in the trial court to affirmatively prove the fact of solvency. Indeed, if any effort were now made to express a judgment as to the value of these properties, other than that found by the trial court, the effort would involve the contradiction of witnesses and, in fact, the credibility of witnesses. In short, it is not clear from this record that

the debtor was insolvent on the date of the conveyances in January, 1923, or that he was insolvent after making the conveyances. For this reason it becomes unnecessary to discuss whether the consideration received by Mads N. Overgaard for the transfer of the three lots on January 2, 1923, represented a fair consideration as that term is referred to in section 4, supra, and defined by Laws of 1919, c. 209, § 3 (9 U. L. A. p. 126).

A further question is whether the transfers on January 2, 1923, were made with actual intent on the part of Mads N. Overgaard to hinder, delay, or defraud his creditors within the meaning of § 7, supra. Under that section the burden of proof was·upon the plaintiff, who is appellant here, to establish by a preponderance of the evidence that the conveyances were made with fraudulent intent. James v. Joseph, 156 Tenn. 417, 1 S. W. (2d) 1017, 1019. The trial court having found the conveyances were made in good faith, a reversal is justified only by a showing that the finding was against a clear preponderance of the evidence. Here again is a controversy over valuations adopted by the trial court in its findings. In this instance reference is made to valuations fixed upon the Sioux Falls properties conveyed by the debtor and a comparison of value with consideration. But it was not essential for the debtor in the trial below to establish that the consideration received for these properties represented a "fair consideration" as that term is defined in the Uniform Fraudulent Conveyance Act, being Laws 1919, c. 209, § 3. The true question was whether the consideration received by Mads N. Overgaard for his property, taken into consideration with all other evidence, affirmatively establishes a fraudulent intent upon his part to hinder, delay or defraud his creditors. It would serve no useful purpose to review all of the conflicting evidence pertaining to the valuations of these three lots. It is sufficient to note that the disparity between the value as proven and the consideration received is not, in itself, sufficient in this case to establish actual fraud. Aside from this point of fact there are no circumstances to justify a discussion of the question of actual fraud. It is a very striking circumstance that, while the conveyances were made by the debtor to members of his family, in satisfaction or for the assumption of indebtedness, the proof of that indebtedness was not impugned in the trial below. There appears to have been no effort to establish a fabrication of

a reason, or of the consideration, for the transfers. There was no proof of haste, concealment, or of statements, acts, or conduct, on the part of Mads N. Overgaard that would serve to indicate a fraudulent intention. He merely appears to have been owing substantial sums of money to his relatives and to have conveyed property in discharge of that indebtedness at a time when he still retained the ownership of the equities in six large apartment houses, in Minneapolis and St. Paul, the value of which is not shown to have been less than all other indebtedness which he then owed.

In short, if we were to agree with appellant that the trial court's findings as to the value of the apartment house properties was erroneous on the one hand, and that the valuations fixed by the trial court upon the properties conveyed by the debtor were likewise erroneous, these facts alone would not demonstrate that the judgment, as entered by the trial court, was wrong.

Concerning the last transfer made by the respondent Mads N. Overgaard on March 1, 1923, to his son, the respondent Clifford N. Overgaard, a different situation is presented. At that time the debtor did not own the apartment house properties, having transferred the same for the $200,000 note above mentioned. A great deal of testimony and much argument is directed to the point that Streeter was insolvent as well as Rogers who indorsed the note, but it is apparent that the trial court agreed with appellant in this respect by a finding which establishes that, on the date of the conveyance to Clifford N. Overgaard, Mads N. Overgaard was insolvent,—having been swindled out of his property by Streeter and Rogers. The trial court, however, found that the fact of the debtor's insolvency on that date was unknown to either Mads N. Overgaard or Clifford N. Overgaard. Certainly there is nothing in the record to justify a reversal of that finding of fact. Accordingly, the trial court entered judgment, with respect to the conveyance of this fourth lot, to the effect that Clifford N. Overgaard should have and retain good title to the lot, subject to a certain mortgage against it, unless, within a specified time, the plaintiff should pay him the sum of $1,000, which was the amount of consideration paid for the lot. In the Uniform Fraudulent Conveyances Act, as adopted in this state, it is provided:

"A purchaser who without actual fraudulent intent has given less than a fair consideration for the conveyance or obligation, may

retain the property or obligation as security for repayment." Laws 1919, c. 209, § 9, subd. (2).

"Fair consideration is given for property, * * * when in exchange for such property, * * * as a fair equivalent therefor, and in good faith, * . * * an antecedent debt is satisfied." Id., § 3, subd. (a).

Having found that the value of the lot conveyed on March 1, 1923, by Mads 'N. Övergaard to his son, Clifford N. Övergaard, was greater than the consideration paid for the lot, but having found, nevertheless, that the purchaser was without actual knowledge of the insolvency of Mads N. Overgaard, it follows that the trial court's judgment with respect to this conveyance was in conformity with the statutory provisions above quoted.

The judgments and orders appealed from are accordingly affirmed.

POLLEY, CAMPBELL, BURCH, and BROWN, JJ., concur.

SHERWOOD, P. J. (dissenting). I think findings 7 and 11 are both unsupported by the evidence and prejudicial to appellants. For these reasons the judgments should be reversed and a new trial ordered.