Charles TRAVITZKY, Plaintiff and Respondent,

v.

T. O. KNUTSON, Defendant and Appellant.

No. 7693.

Supreme Court of North Dakota.

Aug. 10, 1957.

Day, Stokes, Vaaler & Gillig, Grand Forks, for plaintiff and respondent.

Philip R. Bangs, Grand Forks, for defendant and appellant.

MORRIS, Judge.

On August 4, 1953 in the city of Miami, Florida, the Florida Diamond Cutting Corporation executed and delivered to the plaintiff three promissory notes, each in the sum of $3,000 and due December 4, 1953, December 18, 1953 and December 30, 1953 respectively. All of these notes were pay-

able at the First National Bank of Miami, Florida, "with interest thereon at the rate of —— percent per annum from —— until fully paid."

The defendant by answer admitted the execution of the notes and his endorsement thereon. The record shows that the notes were given for the purchase of diamonds from the plaintiff by the Florida Diamond Cutting Corporation and as a part of the transaction were endorsed by the defendant before the notes were delivered to the plaintiff. Each of the notes contained a waiver of demand, notice of nonpayment and protest.

The trial court determined that each of the notes was dishonored by nonpayment whereupon the immediate right of recourse to the defendant as an endorser accrued to the plaintiff who was the holder thereof and a trial by jury having been waived, judgment was ordered for the principal sums represented by the notes together with interest at the rate of six percent per annum from and after the respective dates of maturity to the date of entry of judgment. From a judgment entered pursuant to the order of the trial court the defendant now appeals. The case is here for trial de novo.

The appellant presents two contentions. The first is, quoting from appellant's brief,

"that when promissory notes fail to specify the rate of interest, and leave blank the spaces provided in such notes where the rate of interest can be stated; and the payee to whom such notes are delivered in such condition, does not insert a rate of interest in the spaces provided in the notes, that such notes do not provide for interest, and that no interest should be allowed on said notes, either before or after maturity."

Appellant's second contention is that if interest is to be allowed at all it should be at four percent, the legal rate in North Dakota, rather than six percent, the legal rate in Florida.

With respect to the first contention an examination of the pleadings shows that plaintiff's amended complaint asks only for judgment for the principal of the notes with interest thereon from maturity at six percent per annum. Judgment was rendered in accordance with the prayer of this complaint.

These are not notes that specifically or by implication provide that they are payable without interest unless such an implication can be drawn from the unfilled blanks. The question is does the fact that the blanks in these notes with respect to interest were left as printed without being filled in indicate an intention that no interest was to be paid or does it indicate that interest was to be paid from the date of the note but the rate was not agreed upon in which event the legal rate at the time of the execution of the note would be implied. The majority of the courts that have considered similar questions have adopted the latter construction. Hornstein v. Cifuno, 86 Neb. 103, 125 N.W. 136, 20 Ann.Cas. 1267; Praest v. Quesner, 113 Neb. 485, 203 N.W. 549; Crawford v. Simonton, 163 Ala. 609, 50 So. 1024; Burnett v. Burnett, 68 Mont. 546, 219 P. 831; Chelsea Exchange Bank v. Warner, 202 App.Div. 499, 195 N.Y.S. 419. In our own state the case of Merchants' National Bank of Wimbledon v. Brastrup, 39 N.D. 619, 168 N.W. 42, 43, while not strictly in point definitely points to this construction. In that case the printed provision of the note "with interest payable annually at the rate of twelve percent" was changed before execution by striking out the word "twelve." When action was brought on the note by the payee the figures "10" were written in above the "twelve" that had been stricken. The maker sued and was met by the defense that the "10" had been written in after delivery. The evidence was conflicting as to when the "10" had been written in. In granting a new trial because of erroneous instructions, the court said that the note:

"will be presumed to bear the legal noncontractual rate of interest, which

in North Dakota is 7 per cent., and in such case the holder would be justified in writing in the word or figure 'seven' therein and above the word 'twelve,' which has been crossed out."

In construing the notes in question we reach the conclusion that they provide for interest without stating the interest rate and that under the statutes and decisions of the state of Florida the plaintiff is entitled to recover the principal and interest as prayed for in his complaint.

■ The notes upon which the plaintiff seeks to recover were made, executed and delivered in the state of Florida. They are payable in that state. Without question they are Florida contracts. Their interpretation and the measure of plaintiff's recovery thereon are determined by Florida law. 11 Am.Jur., Conflict of Laws, Secs. 146 and 157; 10 C.J.S. Bills and Notes § 59; Beale on Conflict of Laws, Sec. 346.3; Williston on Contracts, Rev. Ed., Sec. 615; Restatement of the Law, Conflict of Laws, Sec. 358. See also Douglas County State Bank v. Sutherland, 52 N.D. 617, 204 N.W. 683.

The defendant raises the question as to whether in event he is liable for interest the rate should be four percent, the legal rate in North Dakota, or six percent, the legal rate in Florida. The statutes and decisions of Florida speak with reference to both the liability of a payor and the rate of interest he is to pay on notes of the character here involved. In Bennett v. Williams, 149 Fla. 4, 5 So.2d 51, it is said:

"Section 6936, C.G.L. 1927, provides for the rate of interest where the instrument makes no provision for an interest rate. Under this section, if no attempt had here been made to state an interest rate, interest at the rate of eight per cent per annum would have been assessable. Myrick v. Battle, 5 Fla. 345, Patrick v. Kirkland, 53 Fla. 768, 43 So. 969, 125 Am.St.Rep. 1096, 12 Ann.Cas. 540."

The statute referred to in the above quotation was amended to reduce the rate of interest to six percent by Sec. 687.01, Fla. Stat., F.S.A. and at the time of the execution of these notes read as follows:

"In all cases where interest shall accrue without a special contract for the rate thereof, the rate shall be six per cent per annum, but parties may contract for a lesser or greater rate by a contract in writing."

■ Construing the notes in accordance with the laws of Florida it is clear to us that the maker and endorser contracted to pay interest on the principal "until fully paid", and no specific date being stated as to when the interest should commence to run the notes bore interest from date.

"Where the instrument provides for the payment of interest, without specifying the date from which interest is to run, the interest runs from the date of the instrument, and if the instrument is undated, from the issue thereof." Sec. 674.19(2), Florida Statutes 1953, F.S.A.

■■ The defendant further argues that in this case the court having awarded interest only after maturity must be deemed to have made the award on the basis of damages which should be measured by the legal rate of four percent in North Dakota, the state of the forum, rather than the Florida rate of six percent. Without conceding the validity of that premise we would point out that since the notes provide for interest "until fully paid" interest after maturity is awarded pursuant to the terms of the contract and not as unliquidated damages for the breach thereof. The fact that the plaintiff may have been entitled to interest before maturity of the notes as well as to the interest after maturity as prayed for in the complaint does not operate as a waiver of that to which he is clearly entitled under the laws of Florida which is the principal due on the notes with interest thereon from

the date of maturity at the rate of six percent per annum until the entry of judgment.

The judgment appealed from is affirmed.

GRIMSON, C. J., and SATHRE, JOHNSON and BURKE, JJ., concur.