**Alice F. ROZAN, Plaintiff and Appellant,**

**v.**

**Maxwell M. ROZAN, also known as M. M. Rozan, and also known as M. R. Maxwell et al., Defendants and Respondents,**

**and**

**Herbert T. Silverberg, Intervenor and Appellant.**

**No. 7951.**

Supreme Court of North Dakota.

June 1, 1964.

698

Bjella, Jestrab & Neff, Williston, for Herbert T. Silverberg, intervener and appellant.

William S. Murray, Bismarck, Gustave L. Goldstein, Beverly Hills, Cal., and Bjella, Jestrab & Neff, Williston, for Alice F. Rozan, plaintiff and appellant.

E. J. McIlraith, Minot, for Maxwell M. Rozan, defendant and respondent.

Jansonius, Fleck, Smith, Mather & Strutz, Bismarck, for Lee McCormick and Jessie McCormick, defendants and respondents.

Walter O. Burk, Williston, and Stanley B. Frosh, Washington, D. C., for Eugene D. Rosen, defendant and respondent.

Cox, Pearce & Engebretson, Bismarck, for Stanolind Oil Purchasing Co., defendant and respondent.

DOUGLAS B. HEEN, District Judge.

Plaintiff instituted this action upon a judgment and decree of divorce rendered by the courts of California, and Herbert T. Silverberg, the intervenor, is a judgment creditor of defendant Rozan and by way of intervention in the instant suit seeks to enforce a money judgment obtained in the State of California.

Being considered and determined in this opinion are two separate appeals, plaintiff Alice F. Rozan and intervenor Silverberg both having appealed from a judgment of the District Court of Williams County, North Dakota, and from an order of that court denying a motion for a new trial, and both appellants in this Court demand trial de novo.

Plaintiff Alice F. Rozan, sometimes referred to as A. F. Rozan, and defendant Maxwell M. Rozan, also known as M. M. Rozan and M. R. Maxwell (designated hereafter as "Rozan" for purposes of this opinion), were married at Monroe, Michigan, in 1927, subsequently residing for varying periods of time in Colorado and in at least one other State. One child, John Elias Rozan, was born to their marriage.

In August of 1948, plaintiff and Rozan rented a dwelling in California, and it is apparent from the record that these parties then did not own other property of consequence. The Rozans in July, 1949, entered into a contract for the purchase of a

home in California. In the same year, Rozan was a patient in a Veteran's Administration hospital in California, and subsequently, because of disability, need and lack of resources, made application for a veteran's pension with the Veteran's Administration.

Rozan in 1951, using borrowed money came to North Dakota and acquired by deed or lease certain mineral interests, receiving such largely in his name although certain acreage was taken in the name of the plaintiff. Among such properties so acquired was certain mineral acreage which for the purposes of this action are referred to as the "Kvam" properties. In the same year, the "Kvam" acreage was transferred by Rozan to his nephew, Sanford Rollins, however, it is evident that Rozan retained the actual and beneficial interest thereof. Subsequently, the "Kvam" properties developed considerable value and much of the controversy in this case centers around this particular property.

Differences arose in the marriage relationship, and plaintiff and Rozan separated in April of 1953, plaintiff instituting an action for divorce in California. Almost immediately following the separation, Rozan, commencing in June, 1953, transferred and conveyed, without plaintiff's knowledge or consent, the North Dakota mineral interests to defendants, Eugene D. Rosen, individually, and as trustee for John Elias Rozan, and to defendant McCormick.

On July 12, 1955, plaintiff was granted an interlocutory decree of divorce in California, and upon appeal such decree was modified and affirmed, the final decree subsequently issuing. The judgment of divorce, among other things, adjudges and determines that the litigants were residents of California for purposes of divorce, and further that all properties accumulated by the parties from and after July, 1948, wherever located, including real property interests in North Dakota, was and is community property of the parties, such interests having been acquired with community property funds and assets. The decree further found that Rozan's transfers and conveyances to defendant Rosen, individually, and as trustee for John Elias Rozan, and to defendant McCormick, were wash transactions upon simulated considerations, being a scheme attempting to defeat plaintiff's marital interest, the California court adjudicating all such transfers and conveyances fraudulent as to plaintiff. The judgment further awarded and decreed to plaintiff a 65% interest, Rozan retaining the remaining 35% interest, of all community property, including therein the real property interests situate in North Dakota, plaintiff further being granted alimony, support money and other incidental relief.

The instant action is brought by plaintiff upon the California divorce decree to recover accrued sums under that judgment; to have this Court decree all North Dakota property acquired by Rozan and plaintiff, as described in the complaint, to be community property of plaintiff and Rozan; to establish title to such community properties in the ratio of 65% to plaintiff and 35% to Rozan, as fixed by the California divorce decree, and that plaintiff's proportionate interest be decreed to be held under implied trust for plaintiff's benefit; to set aside certain alleged fraudulent conveyances; and, plaintiff asks that title to the extent of 65% interest of all real properties so fraudulently conveyed as alleged be quieted in her.

Intervenor Silverberg recovered a judgment of $23,556.00 against Rozan in a tort action in California, and has intervened in the instant action to establish such judgment in this State. For a separate cause of action, the intervenor alleges that the transfers and conveyances of Rozan to Rosen, individually and as trustee, and to McCormick, are fraudulent to such intervenor as a judgment creditor, and asks that such transfers be set aside and that the properties so allegedly fraudulently conveyed be decreed to be held in trust for Rozan and his creditors and applied towards satisfaction of intervenor's judgment.

Upon trial in North Dakota, the District Court awarded the plaintiff, and the intervenor, each, the money judgment as asked by such claimant upon her or his cause of action based upon foreign judgment as pleaded, but granted no further relief to the plaintiff or the intervenor and dismissed all other claims for relief.

■ It is settled in North Dakota that a divorce action is regarded as a proceeding quasi in rem, the res being the marriage status. Schillerstrom v. Schillerstrom, 75 N.D. 667, 32 N.W.2d 106, 2 A.L.R.2d 271. This is in accord with the general rule as found in 17 Am.Jur. Divorce and Separation § 9, page 260;

"In so far as the action is limited to one for a divorce, it is essentially a proceeding in rem or, speaking more accurately, quasi in rem. The res upon which the judgment operates is the status of the parties. But in so far as one seeks incidental relief, such as an award of alimony, the custody of a child, or the judicial determination of property rights, the action is in personam unless there are special circumstances, such as the presence of property or subject matter within the divorce state which enables the court to proceed in rem against the property or subject matter."

■ In this respect, defendant Rozan does not question the jurisdiction of the California court to deal with dissolution of the marriage in question, he having appeared personally and defended the action in that court, and the judgment and decree of that court is to be accorded full faith and credit insofar as the California court, acting within its jurisdictional limitations, affected the marital status of the parties to the marriage. Weldy v. Weldy, 74 N.D. 165, 20 N.W.2d 583. It is settled in this State that a court decree or court judgment of another state in its determination of property rights may not directly affect or transfer title to real property situate in North Dakota, and the California

decree, being in personam and adjudicating the equities of the litigants to lands situate in North Dakota, did not have the direct in rem operational effect of transferring title to real property, the situs of which is beyond the territorial jurisdiction of the California court of divorce. A decree or judgment of a court of another jurisdiction having such a purported consequence will not be accorded full faith and credit under Article IV, Section I, of the Constitution of the United States. In re Reynolds' Will N.D., 85 N.W.2d 553, citing Fall v. Eastin, 215 U.S. 1, 30 Sup.Ct. 3, 54 L.Ed. 65, 23 L.R.A.,N.S., 924, 17 Ann.Cas. 853, and Bullock v. Bullock, 52 N.J.Eq. 561, 30 A. 676, 27 L.R.A. 213, 46 Am.St.Rep. 528; Carpenter v. Strange, 141 U.S. 87, 11 Sup. Ct. 960, 35 L.Ed. 640; Higgins v. Higgins, 60 S.D. 576, 245 N.W. 397; 17A Am.Jur. Divorce and Separation § 991, page 172; 19 Am.Jur. Equity § 25, page 53; 27B C.J.S. Divorce § 383, page 886, and 15 C.J.S. Conflict of Laws § 19, page 936, et seq.

■ However, authorities are in general agreement that the foreign court of adjudication, having the parties properly before it, may determine equities of those parties in real property situate in another state, and may order and compel conveyance of lands in another state and thus by an in personam decree indirectly affect such title, and it is the executed conveyance and not the decree which is operative upon such title. Hoppe v. Hoppe, 181 Kan. 428, 312 P.2d 215; Fall v. Eastin, supra; Bullock v. Bullock, supra; Phillips v. Phillips, 224 Ark. 225, 272 S.W.2d 433; Buaas v. Buaas, 62 Nev. 232, 147 P.2d 495.

■ Further, although the precise question has not been decided in this jurisdiction, there is authority that a divorce decree of one state—adjudicating the equities of the parties in and to lands in another state and directing conveyance in accordance therewith, when final, and if the parties properly before the court neglect or refuse to comply with the in personam order directing such conveyance—is enforceable

in the courts of the situs state, providing such is not precluded by public policy, by an in personam action, the principles of res adjudicata and collateral estoppel having application to the issues of such enforcing action. Fall v. Eastin, supra; Matson v. Matson, 186 Iowa 607, 173 N.W. 127; Tolley v. Tolley, 210 Ark. 144, 194 S.W.2d 687.

In the case at bar, examination of records, files, transcripts and other evidence reveals that the judgment of the California court, despite personam jurisdiction of Rozan, did not direct or require conveyance of the North Dakota real property to the plaintiff. Under these circumstances, and in view of the above authorities, that portion of the California decree purporting to vest a 65% interest to plaintiff, and a 35% interest to defendant, of North Dakota real properties, and thus directly affect and vest title in these litigants, is a nullity and is not entitled to, nor shall it be accorded, full faith and credit by the courts of this State.

The California court, by its decree of divorce, did find that the North Dakota properties were acquired with community property funds and inquiry must be made of the legal effect of this finding.

For divorce purposes, personal property acquired during the continuance of the marriage is governed by the law of the domicile of the parties, in this instance, by the law of the State of California. Restatement of Conflict of Laws, Section 290; 15 C.J.S. Conflict of Laws § 18, page 926; 92 A.L.R. 1347, 1352. It scarcely requires citation of authority, and it is satisfactorily established in this action, that the California court had full power to determine in that divorce action the character of the personal property of the spouses, and the finding by that court that the North Dakota real property in question in this action was acquired with community property funds is entitled to full faith and credit, that court having jurisdiction of the res and of the parties, and such finding in res judicata of

that issue and conclusive upon the parties to the California action. 27B C.J.S. Divorce § 300(2), page 370; See, Dennis v. Pease, 61 N.D. 718, 240 N.W. 611; Weldy v. Weldy, supra.

Under the facts of the case at bar, and in accord with legal authorities generally, use of community property funds by defendant Rozan—he having no superior, other or better right or title thereto, for the purchase of North Dakota land or interest therein—did not operate to change, alter or destroy the community character of those funds nor effect any divestment of ownership whatsoever. Such North Dakota real properties having been acquired with their community property funds, plaintiff and Rozan thereupon became owners in common of these properties, they having contributed equally toward such acquisition. 92 A.L.R. 1347, and 145 A.L.R. 584, and authorities cited therein; Restatement of Conflict of Laws, Section 260 and 292; for an interesting and informative discussion on this aspect, see Leflar, The Law of Conflict of Laws, Section 147, page 282, 283, and 99 Trusts and Estates, 878, 884.

Our statute provides that,

"When a transfer of real property is made to one person and the consideration therefor is paid by or for another, a trust is presumed to result in favor of the person by or for whom such payment is made." 59-01-06(4) NDCC.

The established facts in the instant action conclusively demonstrate that community funds and assets, one-half of which were owned by plaintiff and with her consent were used by Rozan to acquire the North Dakota mineral interests in his name, thus giving rise to a resulting trust pursuant to the statutory presumption whereby Rozan although the nominal owner of record of all such properties, nevertheless, held an undivided one-half of such purchased properties in trust for plaintiff; Restatement of the Law of Trusts 2d, Section 440,

page 393, and Comment h. thereof; Cf, Kernkamp v. Schulz, 44 N.D. 20, 176 N.W. 108; But see, Barker v. Barker, 75 N.D. 253, 27 N.W.2d 576, 171 A.L.R. 447; her one-half interest in and to such North Dakota properties resulted from her definite proportionate contribution towards its acquisition. Van Sickle v. Olsen, N.D., 92 N.W.2d 777; 90 C.J.S. Trusts § 190, page 93.

It is further provided by our law that,

"Each one to whom property is transferred in violation of a trust holds the same as an implied trustee under such trust, unless he purchased it in good faith and for a valuable consideration;" 59–01–06(3) NDCC.

See also 59–03–08, NDCC.

"Good faith shall consist in an honest intention to abstain from taking any unconscientious advantage of another even though the forms or technicalities of law, together with an absence of all information or belief of facts which would render the transaction unconscientious." 1–01–21 NDCC.

In Merchant v. Pielke, 10 N.D. 48, 84 N.W. 574, it was held that "good faith" is a question of fact to be determined in each case, it being presumed that private dealings have been fair and regular. 31–11–03 (19) NDCC.

The issue then presented is whether or not any of the defendants, Eugene E. Rosen, individually, or as trustee, or Lee and Jessie McCormick, his wife, are purchasers in good faith and for value, and this must be answered in the negative.

In this connection, no useful purpose would be served by a recounting of the evidence offered in this case. Suffice it to say that the record here for review is replete with facts militating against these named defendants, and it is concluded that the presumption of implied trust has not been rebutted or contradicted by the credible evidence of the case, nor are the defendant-grantees purchasers in good faith and for

value under any theory or definition whatsoever. And while such transfers and conveyances, as complained of by the plaintiff, were effectual as grants of Rozan's own interest in each instance, 47–10–01 and 47–10–06 NDCC; Van Sickle v. Olsen, supra; nevertheless, such grants by conveyance or other transfer did not operate to effect a divestment of plaintiff's one-half interest arising from the community character and status of such properties. Consequently, one-half of all real properties which yet remain in the name of Rozan, as record owner of title, and one-half of all real properties conveyed or transferred by Rozan, or Rosen, to the respective defendant-grantees, as such transactions are particularly described in the complaint, are impressed with an implied trust by operation of law and such property is held by Rozan and such respective defendant-grantees as trustees for the use and benefit of plaintiff Alice F. Rozan.

It is earlier noted in this decision that the plaintiff wife, as a part of the California divorce decree, and as incidental relief therein, was awarded a money judgment. Intervenor Silverberg, a successful plaintiff in a tort action maintained in California, thereby obtained a judgment against Rozan. Suing upon these foreign judgments, the plaintiff and the intervenor, respectively, were awarded judgment against Rozan by the trial court of this State. The evidence, the files and the records of the instant action, satisfactorily establish that these claimants, the plaintiff and the intervenor, respectively, under the full faith and credit clause of the Constitution, are entitled to such money judgments as ordered by the District Court of this State, and such judgments are affirmed.

For a separate cause of action, the plaintiff wife, having thus successfully established her California money judgment as a domestic judgment of this State, seeks payment and satisfaction of this judgment by enforcement under the legal process of North Dakota, and for a second cause of action, to that end, alleges that the

transfer of North Dakota real properties by Rozan, and Rosen, were made without consideration and for the purpose of defeating her interests and demands, and are therefore fraudulent, and demands that such conveyances be set aside.

The intervenor Silverberg, for his second cause of action, sets out that he is a judgment creditor of Rozan and avers that the mineral transfers by Rozan, and Rosen, were made wholly without consideration and with intent to hinder, delay and defraud existing and subsequent creditors in an attempt to place such properties beyond the reach of creditors, and such intervenor asks that such transfers and conveyances be decreed fraudulent and void.

Accordingly, should it be determined that such transfers and conveyances were fraudulent as to either the plaintiff or the intervenor, as alleged, and should nullification thereof be ordered as prayed, insofar as such conveyances purport to be valid transfers of Rozan's remaining separate one-half community property interest, then the plaintiff and the intervenor would be enabled to resort to Rozan's remaining one-half interest for satisfaction of her and his respective judgments. See Daisy Roller Mills v. Ward, 6 N.D. 317, 70 N.W. 271.

The California divorce decree found that the various conveyances of Rozan, Rollins and Rosen were fraudulent to plaintiff. The plaintiff, and the intervenor now urge that such finding of fact in res judicata of that issue and hence conclusive upon the parties to this action and decisive of that issue in this case.

Such conclusive effect cannot be given the finding of fraudulent conveyance in the California decree, for as stated in the language of Higgins v. Higgins, supra, "No provision was made in the divorce decree for conveyance by the husband of his interest in the (* * * California) property to the defendant, and a situation where a litigant is seeking judgment in this jurisdiction for the enforcement of an equitable decree of a sister state is not presented." In this instance, the foreign decree while finding that the conveyances in question were fraudulent, by its own language does not purport to be a final disposition of that issue and the recognition of such finding as res judicata in this state would be an acknowledgment of jurisdiction in the courts of another state, by the sole operative effect of a judgment, to affect directly title of said North Dakota property. Accordingly, the finding of fact by the California Court that the conveyances in issue were fraudulent, under the circumstances here presented, is not res judicata of that issue in this instance. In re Reynolds' Will, supra; Restatement of Conflict of Laws, Section 429, Comment (b), page 510; 24 Am.Jur., Fraudulent Conveyances, Section 197, page 319; 37 C.J.S. Fraudulent Conveyances § 337, page 1171, but rather the issue of fraudulent conveyance is to be resolved by the laws of this State and the evidence presented upon trial.

The pertinent North Dakota law having application to the issue of fraudulent conveyances is as follows:

"In the absence of fraud, every contract of a debtor is valid against all his creditors, existing or subsequent, who have not acquired a lien on the property affected by the contract." 13–01–02 NDCC.

"Every transfer of property or charge made thereon, every obligation incurred, and every judicial proceeding taken, with intent to delay or defraud any creditor or other person of his demands, whether or not the same is valid as between the parties thereto, is void as against all creditors of the debtor and their successors in interest and against any persons upon whom the estate of the debtor devolves in trust for the benefit of others than the debtor." 13–01–05 NDCC.

"Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors." 13–02–07 NDCC.

In attacking the transfers and conveyances as fraudulent, the plaintiff and the intervenor have the burden of proving the requisite and critical issue of fraudulent intent by evidence that is clear, substantial and convincing. Bernauer v. McCaull-Webster Elev. Co., 41 N.D. 561; 171 N.W. 282; First Nat. Bank of Mendota, Ill. v. Sullivan, 60 N.D. 391, 234 N.W. 658; Hunt v. Holmes, 64 N.D. 389, 252 N.W. 376; Tomlinson v. Farmers' & Merchants' Bank of Sheyenne, 58 N.D. 217, 225 N.W. 315; Merchants' Nat. Bank of Willow City v. Armstrong, 54 N.D. 35, 208 N.W. 847. The issue of fraudulent intent is one of fact which must be alleged and proved, Stevens v. Myers, 14 N.D. 398, 104 N.W. 529; Johnson v. Rutherford, 28 N.D. 87, 147 N. W. 390; and, " * * * No transfer or charge shall be adjudged fraudulent solely on the ground that it was not made for a valuable consideration." 13–01–10 NDCC.

Plaintiff Alice F. Rozan, in support of her contention of the existence of a fraudulent intent on the part of Rozan in the execution of the various conveyances in issue, developed by the evidence, that some years prior to 1951, during their marriage and while the parties were in Mississippi, she signed several mineral deeds in blank, that is, without designation of grantee or real property description. In 1951, certain mineral acreage, described in these proceedings as the Lena Clifton properties, was acquired by mineral deed, the named grantee thereon being A. F. Rozan, the plaintiff herein.

The plaintiff and defendant separated on April 8, 1953. On June 22, 1953, a mineral deed bearing the signatures of A. F. Rozan and M. M. Rozan, her husband, was filed for record in the office of the Register of Deeds for Williams County, North Dakota, such conveyance being dated May 20, 1953, and purportedly having been acknowledged in North Dakota on May 20, 1953, the named grantee therein being defendant Rosen. During trial of this action, it was established beyond peradventure that plaintiff at the date of execution of the deed and acknowledgement of the same, and for approximately five years prior thereto, was and had been physically resident in California, never having been in North Dakota whatsoever.

It is plaintiff's position, and it is substantiated by the evidence, that one of the deeds in blank, so signed by her as heretofore set forth, was used by Rozan for this transaction. It is further claimed by plaintiff, despite Rozan's many and various manipulations, and it should be here said that an abundance of which are disclosed by the trial record, that such transfer was without any consideration whatsoever, and further that if there was any actual consideration or other benefit involved, which as stated plaintiff denies, that she received no part thereof. The described transaction, plaintiff argues, is illustrative of Rozan's attempts and efforts to place all North Dakota properties beyond plaintiff's reach and so to defraud plaintiff in her demands.

Further testimony and evidence was adduced that Rozan on September 10, 1951, acquired 160 acres of what later proved to be extremely valuable mineral interests, described in this action as the "Kvam properties", and that on September 15, 1961, Rozan by his individual mineral deed placed these properties in the name of Sanford Rollins, a nephew of Rozan. By letter dated December 4, 1952, directed to Rollins and signed by Rozan, it was recited that Rollins held title to these properties as agent for Rozan and/or assigns, it further being set forth that, " * * * I (Rozan) hold an assignment prior dated, duly signed and notarized to be used by me for recording at any time I deem fit to record. * * * ".

Subsequent to the Rollins deed, 40 acres of the Kvam properties were sold to one

Egan on June 2, 1952, the conveyance, executed by Sanford Rollins individually, reciting a consideration of $100.00. However, the trial exhibits disclose that the true consideration for this sale was $62,000.00, Rollins receiving 5% thereof, or $3100.00. The balance of sale proceeds were then deposited to Rozan's account in a California bank, and at least a portion thereof being applied to the Rozan home and to the child of their marriage.

With respect to the Egan transfer, the following testimony was given by plaintiff Alice F. Rozan:

"Question: Do you know anything of your own personal knowledge of the sales made and assignments introduced in this case?

"Answer: Yes sir.

"Question: Do you have any knowledge either as to consideration or value received of the sale or assignments?

"Answer: Yes, sir.

"Question: Which one.

"Answer: The sale of the 40 Egan acres. I negotiated part of the sale.

"Question: You feel that was full consideration.

"Answer: I do. There had been no wells drilled at that time.

"Question: And Egan paid what that land was reasonably worth and is entitled to ownership?

"Answer: I am not questioning his right to that 40 acres."

In Reitsch v. McCarty, 35 N.D. 555, 160 N.W. 694, the Court employed the following language, appropriate to the case at hand:

"Where it is shown that a complainant in an action to set aside a fraudulent conveyance participated in or instigated such conveyance, the court will as a general rule leave him in the posi-

tion which he was instrumental in creating and will hold that he is estopped by his conduct from attacking the conveyance. The general rule is that a creditor, who with knowledge of the transaction receives a benefit under a conveyance fraudulent as to creditors, thereby elects to affirm it and is estopped from questioning its validity."

"The creditor must not have participated in or assented to the conveyance of which he complains, for if he has he cannot afterwards be heard to assert that the transfer was fraudulent per se as to him."

A study of the entire evidence in this case demonstrates clearly that plaintiff was well acquainted with and fully understood Rozan's methods of operation in acquiring and disposing of mineral interests in North Dakota and elsewhere, and this for a considerable period of time before any marital disagreements arose between these parties, and as substantiated by the facts of this case, she not only acquiesced willingly and knowingly in many of these arrangements, but actually assisted and actually participated in the scheme of things to an extent permitting existence of her present situation. The persuasive inference arises by plaintiff's own testimony that she and the child did receive benefits from at least some of the disclosed operations. It is the anomalous position of plaintiff that she desires to affirm and accept the favorable parts of Rozan's business dealings which were of benefit to her, and yet to avoid and disclaim such as for her purposes are undesirable. This may not be done, and it is concluded under the circumstances of this case, that plaintiff is estopped to deny the validity of the deeds in issue as such affected Rozan's proportionate interest, 37 C.J.S. Fraudulent Conveyances § 78c, page 920; and that plaintiff is estopped to assert or claim that she is a defrauded judgment creditor, or other person, defined by 13-01-05 NDCC, entitled to maintain this specific cause of action.

Intervenor Silverberg's pleadings set forth the fact of recovery of final judgment upon a tort cause of action rendered by a California court on November 17, 1954, and this fact is established by the evidence. Assuming without deciding, the precise question being undetermined in this State, that a debtor-creditor relationship arises in a tort case the moment the cause of action accrues, Hansen v. Cramer, 39 Cal.2d 321, 245 P.2d 1059, 30 A.L.R.2d 1204; Myers v. Redmill, 266 Ala. 270, 96 So.2d 450, 73 A.L.R.2d 746; yet in the issue at hand, there is no proof of the time when this intervenor's cause of action arose, such not appearing on the face of the judgment, or as stated otherwise, there is no evidence that his debt existed at the date of the conveyances so claimed by him to be fraudulent. It is settled in this State, and it is a proper premise, that to warrant the setting aside of a conveyance as fraudulent, the requisite fraudulent intent must exist at the time of transfer, and proof of subsequent events or intent is insufficient. McGuigan v. Heuer, 66 N.D. 710, 268 N.W. 679, citing Strampher v. Hupe, 60 N.D. 692, 236 N.W. 247. The burden of proof in this respect is upon the intervenor. There being no credible evidence that the questioned conveyances were fraudulent as to any creditor at the time of transfer, it having been heretofore held that the plaintiff had no standing in this respect, it is concluded that there is a failure of proof in this critical issue. See Hunt v. Holmes, 64 N.D. 389, 252 N.W. 376, and Creason v. Wells, 158 Neb. 78, 62 N.W. 2d 327; 37 C.J.S. Fraudulent Conveyances § 69, page 911, et seq.; 24 Am.Jur. Fraudulent Conveyances § 175, page 306, et seq.

It having been held that plaintiff is estopped to assert or claim that she is a person who may properly maintain that the transfers in question were fraudulent as to her, and the intervenor having failed in carrying his burden of proof in respect to such issue, it becomes immaterial whether or not such transfers and conveyances rendered Rozan insolvent. Purely by way of comment, it is noted that the intervenor petitioned to adjudicate Rozan a bankrupt, and some proof of such proceedings was adduced. However, there is no proof that Rozan was adjudged a bankrupt. It follows that the question of insolvency or fair consideration need not be discussed. See Goodhope v. Overgaard, 56 S.D. 28, 227 N.W. 380.

It is concluded that one-half of the real properties described in the complaint are impressed with an implied trust by operation of law for the benefit of plaintiff Alice F. Rozan and that she was and is the owner thereof and that she is entitled to have title thereto quieted in her to such extent and such interest as aforesaid, and that the judgment of the District Court must be modified in this respect

In the past, certain royalty payments arising by lease with Stanolind Oil Purchasing Company have been accruing pending disposition of this case. The plaintiff, and defendant Eugene D. Rosen, individually, and as trustee for John Elias Rozan, are entitled to these accrued royalties in proportion to their respective interests as heretofore determined.

All other specifications of error, and the record, have been examined and are found to be immaterial to issues determinative of these appeals. We find no other ground for reversal.

The judgment of the District Court is affirmed as modified, and the case is remanded for further proceedings in accordance herewith.

MORRIS, C. J., and TEIGEN and BURKE, JJ., concur.

STRUTZ, J., deeming himself disqualified did not participate, Honorable DOUGLAS B. HEEN, District Judge, sitting in his stead.

ERICKSTAD, J., did not participate.

On Rehearing.

### DOUGLAS B. HEEN, District Judge.

Upon reargument, a rehearing having been granted, it is vigorously asserted by the plaintiff and the intervenor, respectively, that the California divorce judgment—Rozan v. Rozan, (Cal.App.), 309 P.2d 947, as modified and affirmed in 49 Cal.2d 322, 317 P.2d 11—is determinative of the respective ownership interests of the North Dakota real properties here in issue.

These Rozan cases, supra, held that Rozan and wife, subsequent to marriage and after establishing California domicile, acquired the purchase moneys for the North Dakota real properties and that under California law such lands were community property, that Court stating,

> " * * * marital interests in movables acquired during coverture are governed by the law of the domicile *at the time of their acquisition.* * * * Moreover, the interests of the spouses in movables do not change even though the movables are taken into another state or are used to purchase land in another state." (Emphasis supplied.) 317 P.2d 11, 13.

The California Court thereupon proceeded to assign a 65% interest of North Dakota lands to the plaintiff wife and the remaining 35% to the defendant husband. It is claimed that this judicial assignment is res judicata of the rights and equities of the parties to the California divorce case in North Dakota litigation involving real properties in this State.

The original opinion of this Court accorded full faith and credit to the finding of the California Court in the Rozan cases, supra, requisite jurisdiction there existent, that the parties to that divorce action were domiciled in that State at the time of acquisition of the North Dakota lands and that Community funds were used therefor, such finding being res judicata of those issues in this State.

However, the North Dakota real property so acquired did not thereby become imbued with the character of community property, North Dakota not being a community property State. As otherwise stated, use of community funds did not impart the status or character of community property, with all its varied and unique incidents, to the so acquired North Dakota lands. Upon acquistion, using community property funds, each party in this instance acquired a separate yet undivided one-half ownership interest in the North Dakota real property, such being the respective and proportionate contribution at the time of acquisition. This determination does no violence to the general principle that the parties' identifiable interests in movables—equal, common and undivided ownership of the purchase funds under the instant facts—did not change even though later invested in lands in North Dakota, and is in accord with Depas v. Mayo and Wife, 11 Mo. 314, 49 Am.Dec. 88, which was cited as authority to the contrary.

Rozan and wife being owners in common of the North Dakota real properties, what effect then is to be accorded that provision of the California divorce judgment decreeing a 65% interest to the plaintiff wife, and a 35% interest to defendant Rozan, of those North Dakota lands. In this connection, the intervenor takes earnest exception to the following language and conclusion appearing in our original opinion:

> "In the case at bar, examination of records, files, transcripts and other evidence reveals that the judgment of the California court, despite personam jurisdiction of Rozan, did not direct or require conveyance of the North Dakota real property to the plaintiff. Under these circumstances, and in view of the above authorities, that portion of the California decree purporting to vest a 65% interest to plaintiff, and a 35% interest to defendant, of North Dakota real properties, and thus directly affect and vest title in these litigants, is a nullity and is not entitled to, nor

shall it be accorded, full faith and credit by the courts of this State,"

arguing first that as Rozan had divested himself of all title to North Dakota lands, any requirement or direction in the California decree that Rozan convey those properties to the plaintiff wife would be a nullity; and, secondly, that the California divorce judgment was determinative only of rights and equities of the parties and did not operate to change and vest title to North Dakota lands in the parties. In support of these propositions, reliance is placed upon cited authority appearing in the Rozan cases, supra, wherein the California Court specifically disclaims any intent to directly affect North Dakota land title. These cited authorities have been examined, and it is concluded that such do not support the proposition advanced that a divorce decree which determines rights and equities of the litigants—in absence of a personam requirement to convey in such judgment—will by the sole force of its provisions be given an in rem operational effect upon land title in another State.

It is conceded that the California divorce court had jurisdiction of the parties to that action who were personally before the court. That Court had jurisdiction of the res, the marriage status. The California Court did not have in rem jurisdiction of the North Dakota real property. This it would seem is elementary. The only manner or means that Court could effect North Dakota land title was by its order or requirement that one party to the litigation convey to the other party, in other words by a judicially created obligation to convey. At this point, it is important to note that the California Court of divorce concluded at the time of the divorce that Rozan was possessed of at least some North Dakota land; for in Rozan v. Rozan, 49 Cal.2d 322, 317 P.2d 11, 15, the California Court employed the following language:

"It is significant that since plaintiff began this action, defendant divested himself of title to all but one parcel of his land in North Dakota * * *."

Accordingly, it is evident, that despite personal jurisdiction of the litigants, as above noted, and despite Rozan's recognized title to at least some North Dakota lands, California as a part or portion of its divorce judgment did not by an in personam order direct or require conveyance by Rozan of the North Dakota lands to the plaintiff wife, and thus no obligation to convey the North Dakota real property was created.

The instant action is not one for specific performance of an obligation, judicially created or otherwise, to convey real property, and the issue of whether a judicially created obligation by California to convey lands situate in North Dakota, or in any other State, shall be given effect in the Courts of North Dakota as a res judicata declaration of the rights and equities of the parties is not presented. This is precisely the holding of Higgins v. Higgins, 60 S.D. 576, 245 N.W. 397. Clearly, since plaintiff is not seeking specific performance of an adjudicated obligation to convey, she of necessity is relying solely, despite disclaimer in this respect by the California Courts, upon a direct in rem operational effect of the California decree—the in rem thrust of its provisions—to alter, transfer and vest title to lands in North Dakota. Adhering to our original holding, and supported by authorities therein cited, that portion of the California divorce judgment purporting to change and fix real property title to North Dakota land, from an ownership in common to some other proportion, is not entitled to, nor shall it be accorded, full faith and credit by the Courts of this State.

This Court is fully agreed, upon reexamination of issues, evidence and authorities pertinent thereto, that the principle of estoppel was erroneously applied in our original decision—as estoppel was there held to have application to the issue of whether the plaintiff wife, under the cir-

cumstances present, could deny the validity of the conveyances in question, and the further question of whether under the disclosed circumstances she was a creditor or such other person entitled to maintain the specific cause of action to set aside the conveyance as fraudulent. In this respect the original decision of this Court must be modified.

In this instance, estoppel being inapplicable, the plaintiff wife may maintain an action to set aside conveyances and transfers executed by the defendant husband which she alleges was fraudulent to her. 27B C.J.S. Divorce § 273, page 165 et seq.; for an extended compilation of authorities, see 49 A.L.R.2d 521.

The defense has been raised that there is no evidence that the grantees under Rozan's deeds, such transferees being, Rollins, Rosen and McCormick, participated in any alleged fraud under the facts of this case and argue, citing Bank of Sanborn v. France, 49 N.D. 1, 177 N.W. 375, and Baird v. Meyer, 55 N.D. 930, 215 N.W. 542, 56 A.L.R. 175, that before the conveyances may be declared fraudulent, the plaintiff and intervenor must satisfactorily establish that each party in the chain of title participated in the fraud. It is claimed there is no evidence of such participation and that the plaintiff and intervenor accordingly have failed in proof of their case.

It is sufficient proof of participation if it be proved that the grantor fraudulently transferred real property and that the grantee knew at the time of transfer that the grantor's intent in the making of such transfer was to hinder, delay or defraud the grantor's creditors. Actual knowledge by the transferee of suspicious facts and circumstances as should put a prudent person on inquiry is equivalent to knowledge of all facts which would be developed by reasonable inquiry. Fluegel v. Henschel, 7 N.D. 276, 74 N.W. 996; Wannemacher v. Merrill, 22 N.D. 46, 132 N.W. 412.

An extended analysis of the evidence pertaining to the existence of fraud in the transfers and conveyances in question would serve little purpose. However, comment properly should be made on certain disputed evidentiary rulings by the trial Court.

Defendant Rosen was absent during trial of this action. Such absence, unexplained, and consequent failure to testify, gives rise to an inference unfavorable to the contention of the absent party. Scherbenske v. Maier, N.D., 71 N.W.2d 770. While not conclusive, such inference is to be considered with all evidence of the case in determination of ultimate issues. 20 Am.Jur., Evidence, Section 193, page 195.

In connection with the California divorce action, an attempt was made in Maryland to obtain defendant Rosen's testimony by deposition, Rosen there refusing to answer propounded questions on constitutional grounds of self incrimination. Such deposition was offered during this trial for the purpose of showing knowledge by Rosen of the pending divorce case in California. This evidence was correctly ruled inadmissible by the trial Court. All instruments of transfer here in issue were filed for record prior in point of time to the date of the deposition, and hence such deposition was, for any purpose in connection with this action, immaterial and irrelevant.

Also offered and ruled inadmissible was the testimony of Rozan, the defendant husband, as given in the earlier California divorce action. Under the circumstances here present and the state of the evidence, such testimony was properly admissible. O. S. Paulson Merchantile Co. v. Seaver, 8 N.D. 215, 77 N.W. 1001.

Briefly summarizing the evidence, the plaintiff wife instituted divorce proceedings on June 2, 1953, the parties having separated on April 8, 1953. Immediately upon such separation, and thereafter, the defendant husband by deeds and transfers, some bearing forged signatures, began a designed

**710**

divestment of North Dakota real properties through gift to the son and by purported sale to defendants Rosen and McCormick. The relationships and collusive dealings by and between defendants Rozan, Rosen and McCormick, and combinations thereof, including purchase and re-sale arrangements, modes of negotiation, and considerations involved, clearly, satisfactorily and convincingly establish that Rozan's transfers of the lands in question were a fraud upon the plaintiff wife, and that defendant transferees Rosen and McCormick, not only had actual knowledge of suspicious facts and circumstances sufficient to place a prudent person on duty to make inquiry which would have developed the facts of the scheme, but did possess knowledge that Rozan's intent in the making of the conveyance was to hinder, delay and defraud the plaintiff wife of her property interests and anticipated alimony and other marital allowances.

As the facts developed earlier in this opinion demonstrate, Rollins held title to the "Kvam" property, such having been deeded him by defendant Rozan, this holding arrangement being known to the plaintiff wife. In this respect, Rollins was merely a "medium" or "strawman", holding title for the benefit of Rozan, Rollins being responsive to the instructions of this defendant in disposal of the property. Such being the case, and Rollins not having possession of the land, he is not an indispensible or a necessary party to the action, nor is it necessary to prove his participation in the fraud. 24 Am.Jr., Fraudulent Conveyances, Section 205 (Supplement), and authorities therein cited; 24 A.L.R.2d 395, 419.

It is concluded that the deeds and transfers of the lands, and interests therein, as fully described in the complaints, are fraudulent as to defendant Alice F. Rozan, the transferees thereunder not being purchasers in good faith and for value, and that such described conveyances and transfers are held void and cancelled of record.

Comment must be made that the California money judgments, one basis of the cause of action of plaintiff and intervenor, bear interest at the California legal rate of seven per cent until the original entry of judgment in this State, and from and after this latter date these judgments will bear the legal North Dakota interest rate. Cf., Travitzky v. Knutson (N.D.), 84 N.W.2d 579.

Next the Intervenor contends finally that such share of North Dakota property which may be awarded to the plaintiff wife is liable by execution for satisfaction of Intervenor's judgment based upon the separate tort of defendant husband. It has heretofore been held that the plaintiff wife is entitled to and shall receive a one-half interest in such real property as her separate property. Under the laws of this State the separate property of the wife is not liable for the debts of her husband, 14-07-08, NDCC; and the plaintiff wife takes the property free from such burden of liability for the separate tort of the defendant husband.

In accordance with the above and foregoing opinion, it is the conclusion of this Court as follows:

(1) That the District Court should be and is affirmed in awarding money judgments in favor of the plaintiff, and the intervenor, respectively, and against defendant Rozan, and that the California judgments bear interest at the rate of seven per cent, until the date of entry of the North Dakota judgments, thereafter such interest on the North Dakota judgments to be computed at the legal interest rate of this State;

(2) That one-half of the real properties described in the complaint are held under implied trust for the benefit of plaintiff Alice F. Rozan and title thereto is quieted in her to such extent, modifying the judgment of the District Court;

(3) That the conveyances and transfers, including that certain declaration of trust

in favor of the minor son of the litigants, as such conveyances and transfers purportedly affect North Dakota lands and interests therein are held void and cancelled of record, modifying the judgment of the District Court;

(4) That plaintiff Alice F. Rozan and defendant M. M. Rozan, respectively, possess a one-half ownership interest to accrued oil royalties.

The District Court is directed to enter judgment conformable hereto.

MORRIS, C. J., and TEIGEN, BURKE and ERICKSTAD, JJ., concur.

STRUTZ, J., deeming himself disqualified did not participate, Honorable DOUGLAS B. HEEN, District Judge, sitting in his stead.